CHARITON NATIONAL BANK, Appellee, v. CHARLES M. WHICHER, et al., Appellants.

Estates of decedents: CLAIMS: SUFFICIENCY OF STATEMENT: AMENDMENT. Where claims filed against an estate alleged that the estate was justly indebted to claimant on the notes of third parties, which were just, valid and legal claims against the estate, and that claimant was the legal owner, there was not such a defective statement of the cause of action, in the absence of demurrer or motion for more specific statement, as would preclude claimant from showing that decedent was a partner of the maker of the notes and that the proceeds were used in firm business, thus rendering decedent liable; and it was proper to allow an amendment alleging such facts after the time for filing the claim had expired.

Same: SUFFICIENCY OF STATEMENT: PLEADING. The statement of a claim against an estate is in the nature of a pleading which takes the place of a petition, and is subject to demurrer if it fails to show grounds for its allowance; but it is not generally subject to the strict rules of pleading which apply to ordinary litigation.

Same: AMENDMENT. An amendment to a claim against an estate which is germane to the claim as originally stated, and which does not destroy its substantial identity, or substitute a new and different demand, will not deprive the claimant of the advantages of his original filings.

Same. An amendment, after demurrer to a pleading on the ground that it fails to state a cause of action, relates back to the commencement of the suit.

Same. A usual test for determining whether an amendment states a new cause of action is to inquire whether a recovery had upon the cause of action as originally stated would be a bar to any recovery upon the amended pleading, or whether the same evidence would support both, or whether the same measure of recovery is applicable to both.

Same. Failure to attach a copy of the note to a claim against an estate as the statute requires, which is demurrable, may be cured by amendment.

Same. A claim may remain the same in a legal sense although the grounds may be changed by amendment.

Same. Where the original statement of claims against an estate upon promissory notes was sufficient to justify the court in hearing proof and entering an order for their allowance, an amendment in no manner changing the nature and effect of the original allegations, nor calling for other or different evidence, will not be treated as stating a new cause of action.

*Appeal from Lucas District Court.*—HON. C. W. VERMILLION, Judge.

TUESDAY, FEBRUARY 10, 1914.

THE opinion sufficiently states the nature of the case.—
*Affirmed.*

*Frank H. Dewey, Mayer, Austrian, Platt & Powell,* and *Roberts & Webber,* for appellants.

*F. Q. Stuart* and *J. C. Mitchell,* for appellee.

WEAVER, J.—H. D. Copeland died in May, 1910. He had for some years been president of the plaintiff bank, was also engaged in other business activities, and was reputed a man of large wealth. The defendants Charles M. Whicher and

Howard C. Copeland are the duly qualified administrators of his estate. Within six months after their appointment the bank filed in said probate proceedings eight several claims against said estate, which claims we will mention by number in the order of their statement in the record before us.

(1) In this claim it is alleged that the estate is justly indebted to the bank in the sum of $2,478.50, with interest on a promissory note made by L. P. Pulliam, which is a just, valid, and legal claim against said estate, and of which claim the bank is now the owner. To this is attached a copy of a promissory note which.is signed by L. D. Pulliam, as maker, payable to the order of J. C. Copeland (who, it subsequently appears, was the cashier of the bank). No indorsement by J. C. Copeland is shown.

(2) This claim for $2,948.15 is based upon two notes signed by J. H. Roberts; the first being made payable to the order of J. C. Copeland, cashier, and the other to the order of H. D. Copeland. The statement of the claim is in substantially the same form as in the one upon the Pulliam note above mentioned. No indorsement by the payee of either note is alleged.

(3) This claim for $2,000 is upon three promissory notes made by one C. H. Boothroyd; two of them being made payable to the order of H. D. Copeland, and one to the order of J. C. Copeland, cashier, the allegations of the bank's rights in the premises being made as in the other claims above mentioned. The two notes made payable to H. D. Copeland bear his indorsement "without recourse." The third note is not indorsed.

(4) The fourth claim for $4,467.40 is upon six promissory notes bearing the signature of T. O. Hughes. Of these notes four are made payable to the order of J. C. Copeland, cashier, one to the order of H. D. Copeland, and one to the order of Chariton National Bank, none of which shows indorsement by the payee. Other allegations are like those in claim first described.

(5) The fifth claim for $900 is upon one promissory note

made by R. C. Beamer to the order of J. C. Copeland, cashier, by whom it has never been indorsed. Other allegations of the claim are like those in the claim first described.

(6.) The sixth claim for $590 is stated in similar terms upon two promissory notes made by D. B. Custer, each payable to the order of J. C. Copeland, cashier, and unindorsed.

(7) The seventh claim for $300 is stated in similar terms upon a promissory note made by Joel E. Clark, payable to the order of H. D. Copeland, and indorsed by him, without recourse.

(8) The eighth claim for $3,495.52 is stated in similar terms upon three promissory notes made by W. H. Essex. Two of these notes are made payable to the order of H. D. Copeland, and one to J. C. Copeland, cashier. The first note payable to H. D. Copeland for $2,350 is indorsed by him, with waiver of demand and protest. The others are unindorsed.

It will be observed that these claims each and all (except, perhaps, such as are based upon notes payable to the order of the deceased, and indorsed by him in his lifetime) are founded upon promissory notes none of which, upon their face or by written indorsement, indicate any liability or indebtedness on the part of H. D. Copeland or of his estate to the plaintiff bank, and, aside from the very general allegation as a legal conclusion that the administrators of said estate "are justly indebted to plaintiff" upon the notes mentioned, and that the amount thereof "is a just, valid, and legal claim against the estate of said H. D. Copeland, deceased, of which your petitioner is now the owner," there is nothing revealed showing how or in what manner the notes which apparently evidence the indebtedness of other persons become or are evidence of the indebtedness of the estate of the deceased. Later, and after the time for filing of claims of the third class had expired, the bank, by its counsel, filed various amendments to its said claims to supply the omissions above noted. These amendments, stated as briefly as practicable, are to the effect that the said H. D. Copeland was in his lifetime a silent partner with

Pulliam in business conducted in the name of Pulliam, and
that the note mentioned in claim No. 1 was given for the
partnership for moneys with which to carry on the business
of the firm, and that Copeland, as silent partner, became indi-
vidually liable thereon.    Substantially the same allegations
were made as to the claims numbered 2, 4, and 8, being those
which set out the notes made respectively by Roberts, Hughes,
and Essex, a partnership relation between Copeland, and the
maker being averred in each instance, and that the debt repre-
sented by the note was that of the deceased as well as that of
the maker.    In the matter of the claims numbered 3 and 6,
the amendments aver that the notes were in each instance given
by the maker for the accommodation of the said H. D. Cope-
land, and that the consideration therefor moved wholly to
Copeland, who promised and undertook to pay and discharge
the said notes.    With reference to claim No. 7, on the note of
Clark it was averred that for a valuable consideration Cope-
land had assumed the obligation of said note, and agreed to
pay the same.    The claim made upon the Beamer note being
afterwards disallowed by the court, and there being no appeal
taken from said order, it will not be further traced or
considered.

By the time these amendments were filed, the administra-
tion of the estate had so far developed its condition as to make
it apparent that the assets would be wholly insufficient to pay
all the claims against it, thus exciting a natural rivalry among
creditors to secure for their several claims a place among those
of the third class, and to exclude therefrom as many as possible
of their competitors.    Among these creditors were several
banks in Iowa and Illinois who appeared in the proceedings
and contested the right of the plaintiff bank to amend its
claim, and disputed the sufficiency of the amendments so
pleaded.

Of the various objections raised, the one on which the
contesting creditors principally rely is that the amendments
are in substance and effect the statements of new claims or

causes of action, and, being filed after the time for presentation of claims of the third class had expired, they should be allowed, if at all, as of the fourth class, and not entitled to payment until all the claims of the third class are satisfied. Upon final hearing in the district court it was found and held that plaintiff's allegation of partnership relations between the deceased, Pulliam, Hughes, and Essex had been established by the evidence, and that the claims presented against the estate upon the promissory notes signed by said makers should be allowed to the following extent: The Pulliam note in full; the Hughes notes in full, except one for $1,000, withdrawn by plaintiff upon the trial, and one for $747.27, which was disallowed; and the Essex notes in full. The court further found that claims based upon the alleged accommodation notes made by Boothroyd had been established as to two of said instruments, and the similar claim upon the Custer notes was also allowed in full. The claim on the two Roberts notes was allowed upon the theory that they had been given in part for a partnership transaction, and in part as an accommodation to the deceased, who undertook to pay both obligations. The claim upon the Beamer note was rejected entirely, and that upon the Clark note allowed in full. Each of the claims so established was given rank in the third class. From these rulings, the administrators and contesting creditors have appealed.

In this court, after a considerable fencing over the perfection of the record the parties have entered into a stipulation which in effect eliminates all question of the sufficiency of the evidence to sustain the court's findings concerning the real nature of the transactions in which the several promissory notes had their origin and the nature of the deceased's relation thereto, except it is still insisted that in any event the allowance made upon the Hughes notes is excessive by a matter of something more than $700. Except as to this item, the stipulation removes from the realm of dispute all question of the propriety of the allowance of said claims against the estate,

and leaves for our consideration the single inquiry whether the court erred in giving them standing or rank in the third class.

Appellants' position is: (1) That the claims as originally filed state no cause of action, and that an allowance thereof in such form would be reversible error. (2) That the amendments set up entirely new and independent matter constituting other and different causes of action, and that, if allowed at all, they should be treated as claims filed at the date of the amendments, and therefore as claims falling within the fourth class.

Let us consider the soundness of the first proposition. Is it correct to say that, had plaintiff gone to trial upon its claims as originally filed, their allowance by the court would have necessarily been erroneous? None of these claims were attacked by demurrer or by motion for fuller or more specific statement. In each instance they declare that the estate of the decedent is indebted to the bank upon a specified promissory note, and the instrument so indicated is set out in full. It is true that the note so exhibited does not bear the written signature, indorsement, or guaranty of the deceased, and, looking to its contents alone, it appears to evidence the debt of another and different person, and the statement of the claim does not embody any fact or allegation showing how or in what manner it is made to witness the indebtedness of the deceased or of his estate. But it is not legally impossible that deceased in his lifetime became and was, as between the parties, the real obligor or debtor in such manner that the notes became legally enforceable against him and against his estate. If, for example, he was a member of a partnership doing business under the name signed to the notes, and they were given by the partnership in the course of its business, if they were given to the bank by the maker solely for the accommodation of the deceased, and upon his promise to assume and pay the debt so witnessed, or if they were originally given to evidence the debt of the persons signing them, but deceased for a good and

1. ESTATES OF DECEDENTS: claims: sufficiency of statement: amendment.

sufficient consideration had assumed and agreed to pay them, then under the law as settled in this state the bank could, as holder of said notes, enforce payment thereof against him, or have them established as claims in its favor against his estate. *Malanaphy v. Manufacturing Co.,* 125 Iowa, 722; *Younger-man's Estate,* 136 Iowa, 488.

We think, therefore, it cannot be said that the statement of the claims even in their original form was necessarily so defective or meaningless that, had the case gone to trial thereon without interposition of demurrer or motion, and the same evidence had been adduced which now appears in the record, the court could not have properly allowed and established them against the estate. Such proof would establish the literal truth of the claims as stated, that the estate was indebted to the bank on the notes therein described, although deceased is not there shown to have been a maker thereof. It is true this court has held the statement of a claim in probate takes the place of a petition, and is subject to demurrer if it fails to show any grounds for its allowance. *Bremer v. Curtis,* 54 Iowa, 72.

2. SAME: sufficiency of statement: pleadings.

The ruling in the cited case was made with reference to facts upon which there could be no recovery either at common law or under the statutes, and the demurrer thereto presented the legal question on which it must finally stand or fall. But it has never been held that claims in probate are subject generally to the rules of pleading which prevail in ordinary litigation. Indeed, it has been distinctly held otherwise. In *University v. Emmert,* 108 Iowa, 502, it is held that a defect which would render a petition demurrable is not necessarily fatal in the statement of a claim in probate. We there cited the statute concerning the proper manner of stating such claims, and said: "These statutes are evidently intended to cover all necessarily to be included in the statement of a claim. No petition is to be required, and, if the sections referred to are complied with substantially, when not assailed the pleading will be sufficient."

It is a matter of common observation to every court and practicing lawyer that these claims are almost universally stated in very general and informal terms, being often prepared without the aid of counsel, and no court thinks of applying thereto the strict and technical rules of the law of pleading as it is observed in ordinary court proceedings, and no amendment which is germane to a claim as originally stated, which does not destroy the substantial identity of the claim, or substitute some other new or different subject of the claimant's demand, will deprive him of the advantage of his original filing. *Wise v. Outtrim,* 139 Iowa, 192. This seems to be the recognized practice in most states. *Hannum v. Curtis,* 13 Ind. 206; *Henderson v. Isley,* 19 Miss. (11 Smedes & M.) 9 (49 Am. Dec. 41) ; *Wood v. Land,* 35 Mo. App. 381; *Trigg v. Moore,* 10 Tex. 197; *Chandler v. Meckling,* 22 Tex. 36; *Mead's Appeal,* 46 Conn. 417; *Flinn v. Schackleford,* 42 Ala. 202; *Thornburg v. Buck,* 13 Ind. App. 446 (41 N. E. 87) ; *Corr's Appeal,* 62 Conn. 403 (26 Atl. 478) ; *Walker v. Gray,* 73 Mo. App. 89; *Hayner v. Trott,* 46 Kan. 70 (26 Pac. 415).

3. SAME: amendment.

In the *Thornburg* case, *supra,* under a statute substantially like our own, the court says:

The strict rules of pleading and practice do not apply in claims against decedents' estates. Neither nicety of averment nor nicety of proof is required. The statute requires that only a succinct statement of the nature and amount of the claim shall be filed. The purpose of the statute is to facilitate the settlement of estates with as little expense as possible to both the estate and the claimant. It is not contemplated that the claimant shall incur the expense of employing professional counsel, and prepare his pleadings with legal accuracy. The rule that a pleading must proceed upon a single, definite theory, the trial had and judgment pronounced upon the theory indicated, has little or no application to claims against estates. This rule concerning theory should not be carried to that degree of refinement that leads to absurdity and injustice. To compel a claimant to conform to this rule would require

him in nearly all instances to employ skilled counsel in the preparation of his claim, and the purpose of the statute would be in a large measure defeated. To this end it has often been held that formal pleadings are not required. If the statement shows the nature and amount of the claim with sufficient precision to bar another action and a *prima facie* right to recover, that is all that is required. . . . The court before which such claims are brought . . . is the ultimate guardian of the interests of the estates of deceased persons, and is given wide discretion. When it is satisfied that the substantial interests of the estate have been preserved and protected by its judgment under the rules above stated, this is all the law requires.

In *Corr's Appeal, supra,* the claim as presented was a simple book entry of indebtedness, ''To cash, $1,700,'' with no statement of the facts or circumstances relied upon, and the court held that, no attack having been made thereon by motion or otherwise, an allowance of the claim could properly be ordered. It has also been held that a claim on a judgment rendered against the deceased in his lifetime in favor of a third person, which claim as filed discloses no assignment of the judgment, is sufficiently established by proof that claimant is in fact an assignee. *Sublett v. Nelson,* 38 Mo. 487. See, also, *Hyatt v. Bonham,* 19 Ind. App. 256 (49 N. E. 361).

The claims now before us even in their original form are expressly based upon an alleged right of the plaintiff to recover on the notes against the estate of the deceased. The allowance from which the appeal has been taken expressly upholds and sustains that alleged right of recovery. It is true that conclusion is reached upon proof of facts not expressly alleged in the original claim, and not shown upon the face of the original instruments; but, in view of the record which discloses no demurrer and no motion requiring any further statement, we think these facts may be regarded as relevant and competent evidence directly supporting the allegations of the claim, the pleading of which evidence was not essential to the right of recovery.

We think it must further be said that the amendments
filed after the expiration of the six months' period do not state
claims differing in nature or substance from the statements as
originally filed.  The original statements were upon claims to
have the amounts of certain promissory notes allowed as debts
or obligations existing against the deceased in his lifetime, and
therefore enforceable against his estate.  The amendments do
no more than to elaborate and clarify those statements by
adding thereto allegations of facts and circumstances which
the pleader adduces as supporting his demand, and as so
amended the claim for which allowance is demanded remains
the same.  At every stage of the proceeding that demand has
been for recovery or allowance upon the promissory notes
described, and it is the allowance of this demand from which
the defendants have appealed.  Even under strict rules of
pleading generally a proper amendment goes to the cause of
action as originally alleged; the amended pleading is regarded
as a continuance of the original pleading, and takes effect by
relation from the filing of the latter.  *Fleener v. Taggart*, 116
Ind. 189 (18 N. E. 606) ; *Fling v. Trafton*, 13 Me. 295 ; *Abbott
v. Judge*, 55 Mich. 410 (21 N. W. 911).

And even after a demurrer has been filed and sustained
on the ground that the petition states no cause of action, an
amendment subsequently filed which cures the defect relates
back to the commencement of the suit.  *Zie-*
4. SAME.         *verink v. Kemper*, 50 Ohio St. 208 (34 N. E.
250) ; *Augusta R. Co. v. Andrews*, 92 Ga. 706 (19 S. E. 713).
See, as bearing hereon, *Myers v. Kirt*, 68 Iowa, 124; *Case v.
Blood*, 71 Iowa, 632; *Gordon v. Railroad Co.*, 129 Iowa, 747;
*Cahill v. Railroad Co.*, 137 Iowa, 577.

A test frequently applied to determine whether an amend-
ment states a new cause of action is to inquire whether a
recovery had upon the cause of action as originally stated
would be a bar to any recovery upon the
5. SAME.         amended pleading, or whether the same evi-
dence would support both, or whether the same measure of

recovery is applicable to both. *Hammond v. Railway Co.,* 49 Iowa, 450; *Davis v. Railway Co.,* 110 N. Y. 646 (17 N. E. 733); *Bank v. Cutler,* 49 Me. 315.

Whether either of these tests is decisive in all cases we need not decide; but it is quite clear that an application of either or all to the facts of this case serves to sustain the propriety of the amendments, and that they do not amount to the pleading of a new cause of action. Surely a recovery had or allowance made in plaintiff's favor upon these notes as demanded in the original claim would bar another recovery or allowance thereon under the allegations of the amendments; the same evidence which would sustain a recovery upon either form of the statement would be equally pertinent and decisive on a trial upon the other, and in either case the measure of recovery is the same—the amount appearing due upon the notes according to their terms.

This result is in our judgment inevitable, even if we apply to the case the strict rule of pleading which obtains in more formal proceedings, a practice which we have seen is distinctly modified and liberalized in dealing with claims in probate. Somewhat in point with this case is *McCall v. Lee,* 24 Ill. App. 585. There the claim was filed by plaintiff in his representative capacity as an administrator. Subsequently he amended his statement to show the debt was due him in his own personal right, and this was held not to be regarded as the filing of a new claim.

6. SAME.

Failure to attach a copy of the note claimed upon, which the statute particularly requires, and the absence of which makes the claim demurrable, may be cured by amendment. *Baker v. Chittuck,* 4 G. Greene, 482.

7. SAME.

The general statute which permits amendments to pleadings allows the same to be made "by inserting allegations material to the case," and under this provision it has been held that a claim may remain the same in a legal sense, although the grounds thereof are

changed by amendment. *Hammond v. Railway Co.*, 49 Iowa, 451.

The claims before us, we repeat, have from the first been claims to recover upon the specified promissory notes, and it would seem clear that the additional allegations subsequently pleaded have material application thereto within the meaning of the statute.

It is argued for appellants that the claims as originally filed state no cause of action whatever, and are therefore to be treated as if never filed until the statement of a cause of action was perfected by the amendments. But man-

8. SAME.

ifestly this rule can have no application where the allegations of the claim or petition are sufficient, if not assailed by demurrer or motion, to justify the court in hearing proof and entering judgment or final order of allowance thereon as we here hold to be the case. Our decision in *Van Patten v. Waugh*, 122 Iowa, 302, is in no manner inconsistent with this holding. There the plaintiff originally presented a promissory note of which he claimed to be the owner, and asked its allowance against the estate. Later, and after defense had been interposed, he filed an amendment, asking to recover for money paid and expended by him as the surety of the deceased. In other words, he abandoned the claim originally presented, and set up another and distinct demand on another and different contract, and it was held that it did not relate back to the original filing. No such question is presented in the case at bar.

Without pursuing the discussion further, we have to say, as already indicated, that we find no error in the rulings of the trial court. While the statements in their original form may be said to have lacked in completeness, they cannot be treated as wholly nugatory and ineffectual, and, in the absence of direct attack thereon, the court might lawfully have proceeded to hear the evidence, and enter order of allowance. The amended statements do not in any manner change the nature

and effect of the original allegations, nor call for or require other or different evidence to sustain the plaintiff's demand.

Concerning the objection made to the allowance of the Hughes notes as excessive, the point is that in an early stage of the transactions between Hughes and the deceased the former included in a note given by him to the bank an item of overdraft on his personal account. The notes then given by him were renewed on one or more occasions, and the appellants argue that the amount of that overdraft is still in the notes, and should be deducted from the allowance. The facts concerning this item are not entirely clear; but it appears that the current personal dealings of the parties were more or less involved in the renewal notes, and that Hughes seems to have paid or accounted for a sum substantially equal to the amount of the overdraft. The trial court seems to have reached the conclusion that Hughes' personal indebtedness has been eliminated from the notes, and, as we are of the opinion such holding has support in the record, we do not feel justified in finding otherwise.

In explanation of the record in this case, it should have been said at the outset that the several claims we have considered, though separately filed, have by stipulation of parties been tried as one, and have been submitted in this court as upon a single appeal.

For the reasons stated in the foregoing opinion, the rulings and judgment of the trial court are in all respects *Affirmed*.

LADD, C. J., and EVANS and PRESTON, JJ., concurring.