W. A. SULLENBARGER, Appellee, v. G. R. AHRENS et al., Appellants.

**APPEAL AND ERROR:** Brief—Errors Identified. Facts applicable to errors relied on must be specifically pointed out, under Supreme Court Rule 53, Par. 4, by reference to page and lines of abstract.

**TRIAL:** Evidence—Omnibus Motion to Strike. A motion to strike out evidence, embracing both competent and incompetent, is properly overruled.

**APPEAL AND ERROR:** Objections First Made on Appeal. Objections not made in trial court will not be considered on appeal.

**EXECUTORS AND ADMINISTRATORS:** Statement of Claims—
Liberality Allowed. Claims in probate are not subject, generally, to the same rules of pleading which prevail in ordinary actions, but may be subject to motion for more specific statement.

**APPEAL AND ERROR:** Exclusion of Question—Necessity to Show Prejudice. Error cannot be predicated upon the mere exclusion of a question. Some offer of proof should appear as to what the answer would have been.

**EVIDENCE:** Res Gestae—Time of Statements. Statements of deceased, against whose estate a claim was filed for personal services, as to why claimant was kept around his premises, wholly indefinite as to when they were made, are not admissible as part of the *res gestae*.

**EXECUTORS AND ADMINISTRATORS:** Claims—Proof, Sufficiency of. Evidence reviewed and held to be sufficient to support the claim and the amount of the recovery thereon.

**STATUTE OF LIMITATION:** Long Continuous Indefinite Employment. When services are rendered for a long continuous period of time, under an agreement for compensation, but wholly indefinite as to the period of employment, or the time or rate of compensation, the statute of limitation begins to run when the employment is terminated.

PRINCIPLE APPLIED: Claim against an estate for personal services. Claimant entered the home of deceased and his wife, at their request, in 1904, and continuously thereafter, up to 1912, and until both the husband and wife were dead, performed extensive and valuable services. He had no other employment. Payment was promised when the contract of employment was made, but nothing was said as to amount or time of payment or length of employment. *Held*, claimant was not limited in recovery to the services rendered within five years preceding the commencement of the action.

**APPEAL AND ERROR:** Misconduct of Counsel—Discretion of Court. The judgment of the trial court that certain misconduct was non-prejudicial will not be disturbed unless an abuse of discretion appears.

PRINCIPLE APPLIED: Counsel for plaintiff, who was seeking to recover from the estate of deceased on an implied promise to pay for services, stated to the jury that claimant had expected to be compensated in the will. The court stated that

such was not the evidence and admonished counsel to keep within the record. Court overruled motion for new trial which raised this question. *Held*, the court did not abuse its discretion.

*Appeal from Benton District Court.*—HON. C. B. BRADSHAW, Judge.

SATURDAY, DECEMBER 19, 1914.

PLAINTIFF filed his claim against the executors in the sum of $3,435. There was a trial to a jury, which resulted in a verdict, and allowance of the claim in the sum of $3,335. Defendants filed a counterclaim for precisely the same amount for room rent and board alleged to have been furnished plaintiff by deceased, but the counterclaim was withdrawn. Defendants appeal.—*Affirmed.*

*W. C. Scrimgeour* and *Tobin & Jensen,* for appellants.

*C. W. E. Snyder,* for appellee.

PRESTON, J.—I. It is contended by appellants in their brief that the trial court erred in admitting evidence of plaintiff as to personal transactions and communications contrary to Sec. 4604 of the Code. The argument is, as they state it, that: "the testimony of Mr. Sullenbarger from beginning to end has, in a roundabout way, brought out exactly what is prohibited by Sec. 4604. We do not point out any specific places in the abstract." The errors relied upon for a reversal are not more specific than the argument except in one particular, which will be hereafter referred to. The rules provide that the brief of appellant shall contain a short and clear statement disclosing ". . . a brief and concise statement of so much of the facts as fully presents the errors and exceptions relied upon, referring to the pages and lines of the abstract." Rule 53, Par. 4.

Appellant has sufficiently pointed out the following in regard to the testimony of plaintiff, and the objection thereto,

1. APPEAL AND ERROR: brief: errors identified.

and the rulings of the court.   After the examination of plain-
tiff had proceeded for a time, and objections
thereto had been made by counsel for de-
fendant, the court asked the witness a number
of questions, evidently for the purpose of trying to separate
the different things testified to by the witness, and to deter-
mine what were and what were not personal transactions and
communications, first saying:   "Now as to these objections
that have been made:  .  .  .

2. TRIAL: evi-
dence: omni-
bus motion to
strike.

"Q. I am asking you if any of these things and other
things you mention were done at the personal request of Dr.
Worley?

"A. It was implied in a verbal contract made the last
week in August or about the 1st of September.

"Q. In what year?

"A. 1904.

"Q. Well, it was implied in the contract that you made
with him?

"A. A verbal contract.

"Court: Well, I will govern that by a ruling or instruc-
tion."

Counsel for defendant then moved to strike out all the
testimony of the witness so far given, because the testimony
and witness are within the prohibition of Sec. 4604 of the
Code; and for the further reason that it appears for the first
time that said testimony is incompetent because:

"Court: Where does it appear for the first time?

"Mr. Tobin: That said testimony, rather, is incompetent
for the reason that it is based upon an alleged contract in
1904, and that the same would now be barred by the statute of
limitations."

The court thereupon excluded "the testimony of the wit-
ness as to the items of work that he did at the personal request
of Dr. Worley.   It seems to me that is a personal transaction."

The motion to strike was not well taken because it included

all the testimony up to that time, a part of which was proper. It is not quite clear from the record whether defendant was not relying rather upon the objection as to the statute of limitations than the incompetency of the witness. The court, by its instructions, of which no complaint is made in regard to this matter, did instruct the jury in regard to an implied promise or contract. We think the error complained of was cured by the action of the court.

2. The second assignment of error is that the court erred in admitting the testimony of claimant, and of claimant's witness, Mrs. Palmer, concerning the pretended agreement made in September, 1904, for the reason that such

3. APPEAL AND ERROR: objections first made on appeal.

agreement, if any, would be barred by the statute of limitations; and said testimony was further incompetent, irrelevant, and immaterial for the reason that no agreement, express or implied, had been pleaded by plaintiff.

We have already disposed of so much of this assignment as relates to the evidence of plaintiff. Mrs. Palmer was a daughter of the claimant. We do not find that either of these objections were made to the testimony of Mrs. Palmer on the trial. There was objection to her evidence and to her as a witness, on the ground that she was incompetent under Sec. 4604. There was considerable discussion between the court and counsel for defendants on that subject, but that question is not now relied upon or argued. Furthermore, claims in probate are not subject, generally, to the same rules of pleading which prevail in ordinary litigation. *Chariton Bank v. Whicher,* 163 Iowa 571, 578; *University v. Emmert,* 108 Iowa 500, 502.

There was no demurrer or motion by defendants in the present case. If the statement of claim was

4. EXECUTORS AND ADMINISTRATORS: statement of claims: liberality allowed.

not sufficiently specific, it would doubtless be subject to a motion for more specific statement. *Wise v. Outtrim,* 139 Iowa 192, 198.

3. Defendants placed three witnesses on the stand to show

statements and declarations of deceased as to the arrangement between deceased and claimant. It is conceded that plaintiff

5. APPEAL AND ERROR: exclusion of question: necessity to show prejudice.

was not present. The questions asked of the three were substantially the same. One of these, Hickey, testified that, "with the exception of seven or eight years, I have lived in Belle Plaine since 1889. I have seen considerable of Dr. Worley all the later years of his life, and especially since 1909. Saw a great deal of him up to four weeks before his death. Had a conversation with him in reference to the plaintiff while Sullenbarger was about the house. Q. State what the conversation was, if any, relative to the motive and reasons or conditions, and expressions that he made to you relative to why and how he kept Mr. Sullenbarger at his house?" Upon objection being made by plaintiff, the court inquired how counsel claimed it was competent, and counsel for defendant stated, by way of argument: "That it was a part of the *res gestæ*, the question being confined to a period sought to be recovered upon herein, assuming that we show that this was

6. EVIDENCE: *res gestae*: time of statements.

the work of charity and out of sympathy for Sullenbarger, and as an explanation of why and how Sullenbarger was about the place." The objection was sustained by the court on the ground that the evidence was incompetent. Counsel made no offer to prove, so far as appears from the record. The witness might have answered, if permitted to testify, that deceased stated to him that the arrangement was as testified to by Mrs. Palmer. We ought not to reverse the case and send it back in order to experiment and see whether witness would have so answered, or, as counsel assume in argument, that the answer would have been of statements made by deceased in his own favor. No time is fixed in the question. So far as appears, the conversation inquired about may have been years before. Counsel for appellant contends it is a part of the *res gestæ;* that is, as we understand the argument, that it would be a part of the transaction of plaintiff's staying at Dr. Worley's

home for the whole period. If the theory of defendant is sound, why would not all that claimant said or did, even though a personal transaction and communication with deceased, be admissible? The theory in regard to *res gestœ* is that it is the transaction speaking through the witness; and, if defendant's theory is sound, Sec. 4604 would apply, not only to the witness, but to the transaction. We think it needs no citation of authority to show that the evidence was not competent.

4. The fourth assignment is that the court erred in refusing to direct a verdict for defendants, for the reason that there was no competent testimony in the case to establish plaintiff's claim. Mrs. Palmer, a daughter of plaintiff, was married a short time before the decease of Dr. Worley, and she had lived in the home for some years prior to her marriage. Mrs. Worley died in 1910, and Dr. Worley died on May 12, 1912. Plaintiff is a brother of Mrs. Worley. Mrs. Palmer testified to a conversation between plaintiff and Dr. Worley and Mrs. Worley in August, 1904. She says:

7. EXECUTORS AND ADMINISTRATORS: claims: proof, sufficiency of.

"Plaintiff had made his plans to go away, and Dr. Worley and Mrs. Worley asked plaintiff to stay, and stated that if he would stay he would be paid, and paid well. My father said he would stay, and the matter was closed. There was no stated amount of money plaintiff should receive as pay. There was a subsequent conversation between plaintiff and Mr. and Mrs. Worley on Labor Day in 1907 in reference to the work of the house. At that time Dr. Worley and Mrs. Worley again asked my father to stay and continue his work as he had been doing."

She then testifies to the character of work she saw her father doing from the fall of 1904 until May, 1912:

"That he did cooking, bread baking, dish washing, scrubbing, heavy sweeping, cared for the furnace, made the garden, mowed the lawn and cared for the walk, waited on Dr. and

Mrs. Worley in their sickness, washed some windows, hung the curtains, carried coal, took care of the stove and the kitchen range. My father had no other employment during that period, and he worked continuously at Dr. Worley's house. I saw Dr. Worley vomit and my father cleaned it up. The doctor would spread papers near the bed so that he could spit on them. Sometimes he missed the papers and father cleaned it up. Sometimes Dr. Worley needed care at night, and father did that. During the last six months of Dr. Worley's life, father slept on a lounge in the reception room. He slept there because Dr. Worley asked him to. During some of that time, my father gave him morphine injections and put applications on his head and prepared other medicine for him at his direction. Father would put him to bed if he wasn't able to go to bed. When the doctor wandered around the house at night, my father would lead him to his room and put him to bed. During the last six months, the doctor was in very feeble health. His eyesight was poor. He had but one eye. One had been removed in 1907. After the eye was removed it gave him pain and there were discharges from the eye."

A physician, testifying for defendant, testifies that he never knew deceased to have any trouble with the eye socket until his last sickness; that at that time he found there was an infection in the orbit. It was painful, and matter was discharged from the orbit. He complained of a pain in the back of his head and medicine was injected to relieve the pain in the eye.

There was evidence of other witnesses on the character of the work which was done, and the condition of the deceased and his wife at different times while plaintiff was there. Evidence was given as to the value of the services. Plaintiff made a claim of $35 per month from September 1, 1904, to September 1, 1911, and of $50 per month from that time to the death of Mr. Worley. The testimony of Mrs. Palmer was not denied or contradicted, and defendant introduced no evidence as to

the value of the services performed by plaintiff. The recovery was in accord with the testimony as to value. We think the evidence was such that it was a question for the jury, and that the verdict is sustained by the testimony.

This disposes of the fourth assignment, as also the claim that the verdict is excessive. What we have said disposes, also, of the fifth assignment of error, wherein it is claimed that the court erred in giving instruction No. 4, because no implied agreement had been pleaded, and that there was no competent evidence of such an agreement. If the jury believed the testimony of Mrs. Palmer, then an implied agreement or promise to pay reasonable value would arise.

5. Assignments 6 and 7 may be considered together. These assignments seem to be the ones most argued and most strongly relied upon by appellants for a reversal. These are that the court erred in refusing to give to the jury defendants' instruction No. 2, for the reason that the statute of limitations would limit claimant's recovery at the most to the five-year period preceding the commencement of the action, and that the court erred in giving instruction No. 9, for the reason last mentioned. The offered instruction was to the effect that in no event could plaintiff recover for any services rendered more than five years prior to the commencement of this action. In instruction 9, the trial court substantially eliminated the question as to the statute of limitations; in fact, did eliminate it, provided the jury found the plaintiff entitled to recover and that the services were continuous.

8. STATUTE OF LIMITATION: long continuous indefinite employment.

Appellant cites 25 Cyc. 1078, where one of the rules bearing upon this point is stated in this way: That in case of services rendered through a long period of years, without time of payment being specified, the law implies a promise to pay for the services as they are rendered, so that an action may be brought at any time during the course of their rendition, and hence that no recovery can be had for services rendered more than the statutory period before action brought.

In the same volume, at page 1077, it is said:

"Where the contract of employment embraces several distinct items of service, which can be and are separately performed and the compensation for each is settled and apportioned, the contract is severable, not entire, and as to each item a cause of action accrues and the statute begins to run when that particular service is rendered. If the contract of employment does not fix any time for payment, the general rule is that the statute begins to run when the work is completed, and not sooner, for the promise to pay continues up to the time the work is finished. Where services are rendered for a long period of time under an agreement wholly indefinite in regard to the period of employment and the mode or rate of compensation, the decisions are in conflict as to when the statute begins to operate. In several jurisdictions the rule in such cases is that the contract is a continuing one, and that the employee's right of action accrues and the statute begins to run when, and only when, the services are fully performed or the employment otherwise terminated, and it is immaterial whether the contract for the services is express or implied."

Still another rule is stated at page 1078 of the same volume. Appellant also cites the following Iowa cases as sustaining the rule he quotes from Cyc.: *Wise v. Outtrim,* 139 Iowa 192; *Carroll v. McCoy,* 40 Iowa 38; *Price v. Price,* 34 Iowa 404; *Porter v. Railway,* 99 Iowa 351; *Broughton v. Nicholson,* 150 Iowa 119.

An examination of these cases shows that they do not sustain appellant's contention. In the *Wise* case it was a question of pleading, in which it was held that an amendment filed after the expiration of the period of limitations, but referring to a prior statement of the same claim filed within the statutory period, should not be treated as the statement of a new claim, but rather an amendment.

The *Carroll* case seems to be against appellant's contention, for there the holding was that, if the contract for the sup-

port of a child fixed no time for its termination, it is presumed to be entire in point of time, and that no part of the charge for services is barred until five years from the time when the contract expired.

In the *Price* case, the question was as to whether a parol promise to pay a debt barred by the statute of limitations was enforceable.

In the *Porter* case, the question was as to whether the account was a continuous, open, current account, and whether a balance struck in a settlement had been brought forward, so as to constitute a part of the account.

In the *Broughton* case, the evidence tended to show an understanding between plaintiff and decedent that plaintiff should be reimbursed at decedent's death. The account was for services rendered and money advanced for a long period of years, and it was held that it was a question for the jury whether the case was taken out of the statute of limitations.

The rule contended for might apply in some cases, where the employment was from month to month or year to year, and there were other circumstances bearing upon the time of payment, but such is not this case, and we do not, therefore, determine what the rule would be under other circumstances. The instant case is ruled by *Bowie v. Trowbridge,* 158 Iowa 98, 102; *Kilbourn v. Anderson,* 77 Iowa 501; *Asher v. Pegg,* 146 Iowa 541.

6. Lastly, appellants claim that counsel for plaintiff were guilty of misconduct in argument to the jury by stating that plaintiff expected to be compensated in the will of deceased. There was no evidence of that. Upon objection being made, the court stated, substantially, that such was not the evidence, and admonished counsel to keep within the record. There was nothing inflammatory in the statement. The statement was not taken down by the reporter, but was shown by affidavit, and the court made no finding as to the fact. One ground of the motion for new trial referred to this matter, and,

9. APPEAL AND ERROR: misconduct of counsel: discretion of court.

by overruling the motion, the trial court necessarily held that, in his opinion, there was no prejudice. The holdings are that misconduct in this respect is not ground for reversal unless the remarks appear to have been prejudicial. *State v. Thomas,* 135 Iowa 717; *State v. Tippet,* 94 Iowa 646. The trial court has a discretion in the matter, and we are of opinion that it was not abused. There is no prejudicial error. The judgment is, therefore—*Affirmed.*

LADD, C. J., EVANS and WEAVER, JJ., concur.