**Jerry KNIGHT and Vicki Knight, Appellants,**

v.

**Gladys A. ANDERSON, Administrator of the Estate of Dean Jacobs, Deceased, Appellee.**

No. 63579.

Supreme Court of Iowa.

May 21, 1980.

Richard L. Wilson and Ronald D. Bonnett of Wilson, Bonnett & Christensen, Lenox, for appellants.

Theodore T. Duffield of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and REES, UHLENHOPP, ALLBEE and McGIVERIN, JJ.

McGIVERIN, Justice.

Claimants Jerry Knight and Vicki Knight, husband and wife, filed a claim in the estate of Jerry's great-uncle, Dean Jacobs, asserting the decedent had made an oral contract to leave them, with all taxes paid, an 820-acre farm and attendant personal property upon the uncle's death, and also to cancel all outstanding debts between decedent and themselves. The trial court awarded claimants the personal property and the cancellation of debts, but declined to award them the farm and made no ruling in relation to taxes. Claimants appeal from that part of the order declining to award them the farm. The estate administrator cross-appeals from that portion of the order awarding claimants the personal property. We affirm as to the personal property awards, and reverse and remand for further consideration as to the real estate claim and the "tax free" issue.

We must determine the following issues in our review:

1. Whether the court erred in overruling the estate's motion to dismiss based on the claimants' failure to comply with the provisions of sections 633.418 and 633.410, The Code;

2. Whether there was sufficient evidence to support that part of the court's order awarding the personal property and cancellation of debts to claimants;

3. Whether the court erred in its conclusion of law concerning evidence of the alleged oral contract for transfer of the land as it would bear on a partial performance exception to the statute of frauds; and

4. Whether the court erred in not specifying whether claimants should receive the awarded property from the estate "tax free."

I. *Scope of review.* Although claimants seek specific performance of an alleged oral contract to convey property, they filed a claim in probate. The case was tried in probate to the court as a law action under section 633.33, The Code. Neither party objected to that procedure. *See* §§ 611.1–.10. Therefore, any error as to the forum is waived. § 611.12. We review this case for correction of errors at law, even though actions requesting specific performance of a contract are generally tried in equity. Iowa R.App.P. 4; § 633.33.

II. *The timely filing of the claim.* Dean Jacobs died intestate on January 26, 1978. A prior will, which did not mention the Knights, had been revoked by him. He

never married or had children. His estate was opened and the second date of publication of notice to creditors was February 9, 1978.

On February 7 the Knights' claim was filed in his estate and stated that claimants sought "delivery of possession of title to all real estate owned by the decedent in Lotts Creek Township, Ringgold County, Iowa, and for delivery of all personal property located or used in the farming of this real estate, all of the above being transferred with all taxes paid and subject to no debts, and for cancellation of all notes and debts outstanding between Dean Jacobs, Deceased and claimants."

Gladys A. Anderson, as administratrix of the estate, on September 25 moved to dismiss the claim on the ground that claimants failed to comply with the requirements of section 633.418, The Code,[1] in that the claim did not state "the nature" of the claim or the obligation of the estate; and in the alternative moved for a more specific statement. The motion to dismiss was overruled and the estate's alternative motion for more specific statement was sustained.

On October 27, pursuant to the court's order, the Knights made their claim more specific and alleged as the basis of their claim an oral agreement made with Dean Jacobs in the fall of 1975. Claimants further stated, in substance, that their claim was based on the following particulars: If Jerry and Vicki would move onto the farm in question and operate the farm under decedent's control, decedent would finance the operation and would so arrange his affairs that on his death all of Jerry and Vicki's debts to him would be canceled, and

the farm, and the personal property on it, would pass tax-free to Jerry and Vicki; that claimants performed their part of the contract and changed their position in reliance thereon; however, Jacobs died without providing for conveyance of the property to claimants under the agreement.

The estate then denied the claim and alleged it was not timely filed under section 633.410, The Code,[2] because it was not filed "within six months after the date of the second publication of the notice to creditors." The court overruled this contention and concluded the claim was timely filed.

In its cross-appeal the estate contends that claimants did not comply with the requirements of sections 633.418 and .410, and the court erred in not dismissing the claim, even as amended. The estate argues as follows: The claimants' filing on February 7, 1978, did not constitute a claim under section 633.418, because it did not state the *nature* of the claim; claimants' more specific statement filed on October 27, which alleged in detail the oral contract, was the first claim filed in accordance with section 633.410, because it did state the *nature* of the claim; and therefore, the October 27 claim was not timely filed with the clerk of court under section 633.410, because that claim was filed more than six months after the second date of publication of notice to creditors.

Claimants respond that their filing on February 7 was a claim meeting the requirements of section 633.418 and, therefore, was timely; also, their more specific statement filed October 27 was not a departure from the original claim and related back to the date of the original filing. We

---

1. Section 633.418, The Code, provides in part:
 No claim shall be allowed against an estate on application of the claimant unless it shall be in writing, filed in duplicate with the clerk, stating the claimant's name and address, *describing the nature* and the amount thereof

 . . . . . .

 (Emphasis added.)

2. Section 633.410, The Code, provides:
 *All claims against a decedent's estate*, other than charges, whether due or to become due, absolute or contingent, liquidated or unliqui-

dated, *founded on contract* or otherwise, *shall be forever barred against the estate*, the personal representative, and the distributees of the estate, *unless filed with the clerk within six months after the date of the second publication of the notice to creditors*; provided, however, that the personal representative may waive such limitation on filing; and this provision shall not bar claimants entitled to equitable relief due to peculiar circumstances.
(Emphasis added.)

believe the claim, as amended on October 27, was timely filed on February 7.

This statement in *Chariton National Bank v. Whicher*, 163 Iowa 571, 579, 145 N.W. 299, 302 (1914), still applies today:

It is a matter of common observation to every court and practicing lawyer that these claims are almost universally stated in very general and informal terms, being often prepared without the aid of counsel, and no court thinks of applying thereto the strict and technical rules of the law of pleading as it is observed in ordinary court proceedings, and no amendment which is germane to a claim as originally stated, which does not destroy the substantial identity of the claim or substitute some other new or different subject of the claimant's demand, will deprive him of the advantage of his original filing.

See *Hankins v. Young*, 174 Iowa 383, 156 N.W. 380 (1916); *accord, Bossen v. Hostetter*, 243 Iowa 1241, 55 N.W.2d 281 (1952).

It is well established that "[i]f the statement of claim was not sufficiently specific, it would doubtless be subject to a motion for more specific statement." *Sullenbarger v. Ahrens*, 168 Iowa 288, 292, 150 N.W. 71, 72 (1914).

As we said in *Chariton National Bank* : [E]ven after a demurrer has been filed and sustained on the ground that the petition states no cause of action, an amendment subsequently filed which cures the defect relates back to the commencement of the suit.

163 Iowa at 581, 145 N.W. at 303 (citations omitted.)

■ Even if we assume claimants' filing of February 7, 1978, failed to state a cause of action because it did not describe the *nature* of the claim as required by section 633.418, the subsequent amendment making the claim more specific filed October 27, 1978, would clearly relate back to the original filing, unless such amendment stated a new cause of action. We do not believe a new cause of action was stated. The amendment related back to February 7 and corrected any defect in the claim.

We hold the court was correct in overruling the estate's contention that the claim was not timely filed.

III. *Award of the personalty and debt cancellation.* On cross-appeal the estate also asserts the evidence was insufficient to support the award by the court to the claimants of the livestock, machinery, and other personal property on the Lotts Creek Farm, as well as the cancellation of an unspecified amount of debts owed by the Knights to Jacobs.

At the trial on the merits of the claim, substantial evidence was presented to support the allegations made in the October 27 amendment to the claim of an oral contract to convey. The evidence showed the following: Prior to his 1975 agreement with Jacobs, Jerry successfully farmed 200 acres, which was owned by his father, in partnership with his father. Vicki had a job in Mt. Ayr. When Jerry decided to go with Jacobs, Jerry and his father dissolved their partnership. As a result, the father was bitter and would not speak to Jerry, who also suffered financially in the final accounting.

■ The trial court also found that:

Claimants' witnesses Art Michaels, Harry Link and Carl Allen testified that they had conversations with the Decedent why he wanted the Claimants, Jerry and Vicki Knight, to move onto and farm and care for his Lotts Creek Farm, and they testified that if Jerry moved onto the Lotts Creek Farm and stayed there and farmed it in the manner of which he wished that he would give the farm to Jerry and that the Lotts Creek Farm and everything on it, including livestock and machinery would be his when he was done with it, tax free and debt free.

The court found those witnesses to be credible and competent. Their testimony was not barred by the dead man's statute, section 622.4, The Code. It is also important to note in this regard that Dean Jacobs, as a businessman involved in farming, wool, and furs, wrote little down himself and considered "his word as his bond."

When the Knights moved to the Lotts Creek Farm in 1975, it was run-down and in disrepair. It was a livestock and grazing farm, being hilly and wooded with few tillable acres. Both Jerry and Vicki worked hard cutting weeds, and repairing fences and buildings. Vicki quit her job in town to work on the farm. Dean liked them and he spent considerable time on the farm. He usually ate Sunday dinner and spent holidays with them. He spent money on machinery and repairs to assist claimants' work in improving the farm, showing more interest in the place than he had for several years. The evidence further showed he took pride in improving the farm because it would someday be Jerry's. Dean highly regarded Jerry as a worker and said "they don't come any better."

The evidence further showed claimants performed all obligations on their part and were still on the farm operating it to Jacobs' satisfaction at the time of his death.

 The estate presented no evidence, but contends that the three witnesses relied on by the court as to the contract to convey were not credible, although competent under section 622.4, The Code. Determination of credibility of witnesses and the weight to be given their testimony is a matter for the trier of fact. *Becker v. D & E Distributing Company,* 247 N.W.2d 727, 730 (Iowa 1976). The court's findings of fact as to the existence of the contract are supported by substantial evidence and are binding upon us. Iowa R.App.P. 14(f)(1).

The evidence supports the court's findings and awards of the personal property and debt cancellation to claimants.

There is no merit to this assignment of the estate's cross-appeal.

IV. *Concerning the real estate portion of the alleged contract to convey.* Claimants contend the court erred in not also awarding them the 820-acre Lotts Creek Farm and in dismissing their claim in that

regard. The estate vigorously resists. As counsel for the estate indicated in oral argument, the farm is the main fighting point in this case. We consider the issues raised by the parties and trial court relative to the real estate.

 A. Claimants assert that the estate's objections under the dead man's statute, section 622.4, The Code, to the competency of claimant Jerry Knight to testify to communications and transactions with the decedent should have been overruled. They say the estate waived any such objection due to not urging it when Jerry was first sworn as a witness, and by allowing Jerry to testify (as to a share-crop arrangement with Jacobs) without objection at a business continuation hearing in the estate under section 633.83, The Code, in that the trial on the merits was merely an extension of that earlier hearing. The court properly sustained the estate's objections. *See Wagg v. Mickelwait,* 165 N.W.2d 829 (Iowa 1969); *Hamilton v. Bethel,* 256 Iowa 1357, 131 N.W.2d 445 (1965).

Claimants also say that the issue over which Jerry was prevented from testifying had been litigated and the objection as to the issue should have been precluded. In addition, the Knights assert that Jerry's testimony from the prior hearing relating to the continuation of business should have been received over the estate's objection because it was evidence necessary to make the continuation of business order, which was judicially noticed, understood. Without unduly extending this opinion, we conclude there is no merit to these contentions of claimants.

B. Claimants next contend the evidence allowed in the record adequately showed an oral contract to convey the realty, as well as the personalty and debt cancellation, in that the evidence of such was not precluded by the statute of frauds, section 622.32(3), The Code.[3] Their evidence showed various

---

3. Section 622.32 provides in part:
 Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent:

3. Those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year.

hardships that accompanied their move to the Lotts Creek Farm in 1975. Primary among these hardships was the bitterness of Jerry's father, Howard, when Jerry dissolved his partnership with Howard. Other alleged hardships were a financial loss accompanying the termination of the partnership with Howard and a considerable increase in Jerry and Vicki's workload due to the greater size of the Lotts Creek Farm and the run-down condition of its buildings and fences. The claimants' theory was that their move to the Lotts Creek Farm was done in reliance on Dean's alleged promises and would have been to their detriment but for those promises.

Other evidence showed that an additional part of the oral agreement in 1975 between the Knights and Jacobs was that while the Knights operated the farm during Jacobs' lifetime, Jacobs was to pay them $400 per month, furnish the money for the farm operation and split the operation profits 50–50. However, the run-down condition of the farm did not forecast any substantial immediate profits.

The court awarded the claimants the personal property and debt cancellation they sought. In doing so the court relied on the testimony of the three disinterested witnesses previously mentioned to determine the terms of the contract.

The court held, however, that claimants had not proven that decedent had agreed to leave the real estate to them. In this regard, the court noted that since the alleged contract was oral, evidence as to the portion of it involving real estate could be used to prove the contract in that particular only if an exception to the statute of frauds applied. The only relevant exception appears in section 622.33, The Code, which provides:

The provisions of subsection 3 of section 622.32 do not apply where the purchase money, or any portion thereof, has been received by the vendor, or when the vendee, with the actual or implied consent of the vendor, has taken and held

possession of the premises under and by virtue of the contract, or when there is any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds.

The court relied on *Davis v. Davis*, 261 Iowa 992, 1002–03, 156 N.W.2d 870, 877 (1968), and earlier cases, in concluding that in order to bring the case within the statute of frauds exception in section 622.33, the conduct, acts, and circumstances offered to show part performance of the vendees' contractual obligations must be referable exclusively to the agreement to transfer land, and if they admit of explanation without reference to the alleged agreement, they do not constitute part performance. The court concluded that claimants' acts were explainable without reference to the alleged contract to convey land in that the alleged part performance was referable to a simple rental arrangement to provide claimants a livelihood. Therefore, the court held that the exception to the statute of frauds did not apply and the alleged oral contract, insofar as it involved an interest in land, could not be proven by the sort of evidence offered.

We believe the court's conclusion of law was erroneous.

While it is true claimants' services rendered to constitute part performance under section 622.33, *see Callon v. Callon*, 185 N.W.2d 762, 765–66 (Iowa 1971), must be referable exclusively and unequivocally to the contract to transfer the land

"this does not mean that there should be an entire absence of conflict in the testimony. If this were so, the party against whom the specific performance is sought could almost always defeat the plaintiff by setting up some other contract, to which the acts of part performance might be referred, and by producing some evidence . . . to support such contract."

*Peddicord v. Peddicord*, 242 Iowa 555, 559–60, 47 N.W.2d 264, 267 (1951).

We believe the court erred in its conclusion of law that claimants' part per-

formance was not referable exclusively and unequivocally to the agreement to convey (absent a finding the court disbelieved that portion of the evidence relative to conveyance of the realty), because claimants' alleged contract to convey included as decedent's consideration for claimants' services, items of personalty, which the court awarded claimants, as well as the farmland.

Claimants' evidence was that the entire alleged oral contract was for Jacobs to convey real and personal property and cancel debts upon his death in favor of claimants, and to have a share-crop arrangement with claimants during his lifetime. In exchange, claimants were to move onto and operate the farm under Jacobs' control. Their evidence showed that claimants had a successful share-crop partnership with Jerry's father. Yet they dissolved that arrangement and went to the decedent's farm. There the claimants made many valuable improvements on the farm with their own efforts. Such conduct is not entirely consistent with an ordinary landlord-tenant relationship.

The case is reversed as to the realty issue and remanded for further consideration by the trial court of the existing record. The court is directed to determine whether the evidence as to the portion of the alleged contract to convey the farm is credible and entitled to weight. If it is, the court may then find an exception to the statute of frauds under section 622.33 has been established. If an exception to the statute of frauds is found, the court then should decide whether there is a preponderance of clear, satisfactory, and convincing evidence of the alleged oral contract to warrant granting specific performance of such contract as to the land in question. *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977). After such findings and conclusions, trial court should enter an appropriate order thereon.

V. *The "tax free" issue.* In their claim the Knights alleged one term of the contract with Jacobs was that the estate should assume all tax liabilities attributable to the property awarded claimants. When the court awarded claimants the personal property and cancellation of debts, the court did not specify whether claimants should receive this property tax free.

On remand, the trial court is directed to rule under the existing record on whether the estate must assume any tax liability on any property, including realty, that may be awarded to claimants. That ruling shall be in addition to the matters to be determined on remand in division IV above.

We have considered all issues raised by the parties whether specifically discussed or not, and either find them without merit or unnecessary to the disposition reached.

In summation, we affirm the rulings of the court that the claim was timely filed (division II) and the award of the personal property and debt cancellation to claimants (division III). We reverse the court's conclusion of law relative to evidence concerning the claim to the real estate (division IV), and remand for further consideration and ruling on the. matters in divisions IV and V.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.