In the Matter of Lloyd E. **LINDSLEY, Appellant,**

v.

**Willard D. ANDERSON, Mary T. Anderson, and Steve Madsen, Sheriff of Cerro Gordo County, Appellees.**

**No. 84–1760.**

Supreme Court of Iowa.

March 19, 1986.

M. Wayne Oltrogge, Clear Lake, for appellant.

Herman P. Folkers and David M. Nelsen, of Nelsen & Folkers, Mason City, for appellees.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

LARSON, Justice.

This action involves the sale of a bowling alley in Mason City, Iowa, called the Family Bowl. On August 5, 1981, the defendants, Willard D. Anderson and Mary T. Anderson, sold the Family Bowl on an installment contract to the plaintiff, Lloyd E. Lindsley. (Lindsley, who commenced this suit, died before trial. His estate is now shown as plaintiff.) Lindsley paid $10,000 down; another $30,000 was to be paid on October 1, 1981. Monthly installments of $2100 were to be paid on the fifteenth day of each month, commencing September 15, 1981. Additional payments were to be made in accordance with a payment schedule incorporated in the contract.

Lindsley defaulted almost immediately. He failed to make the $30,000 payment due October 1, 1981, and the $2100 payment due on October 15. The Andersons served Lindsley with a thirty-day notice of forfeiture, Iowa Code section 656.2 (1981), on October 15, and followed it with an action in forcible entry and detainer on November 24.

On October 20, 1981 (after the notice of forfeiture and before the forcible entry action was commenced), Lindsley negotiated with Richard and Phyllis Fausnaugh for the sale of the property for $400,000. The Andersons, however, refused to consent to the proposed sale and continued their proceedings to remove Lindsley from the premises. After an order was entered removing Lindsley from possession, the Andersons sold it to the Fausnaughs for $400,000.

Lindsley started the present action, based on an alleged oral contract between the Andersons and himself under which, Lindsley claimed, they would own the business "fifty-fifty." Lindsley sought an injunction against enforcement of the order in the forcible entry action, an order establishing a fifty percent ownership in the property, and a judgment against the Andersons for compensatory and punitive damages.

The district court held that the plaintiff's proof of the oral contract fell short of the "preponderance of clear, satisfactory, and convincing evidence" required by our cases in order to allow for specific performance of an oral agreement for the sale of real estate. *See, e.g., Peterson v. Petersen*, 355 N.W.2d 26, 29 (Iowa 1984); *Knight v. Anderson*, 292 N.W.2d 411, 417 (Iowa 1980).

The court of appeals reversed. It noted that the Andersons produced no evidence at trial to rebut the allegations of the oral contract and the plaintiff's evidence in support of it. It concluded: "We have reviewed the entire record, especially the exhibits, and determine it supports the plaintiff's claim. Under the facts and circumstances, plaintiff's claim is logical, and we determine the agreement should be enforced." It held Lindsley's estate was entitled to a one-half ownership of the Family Bowl. It did not consider the original claims for compensatory and punitive damages, nor does it appear that the plaintiff has pursued these matters.

We agree with the district court that the evidence was insufficient to establish the contract. We therefore vacate the court of

appeals decision and affirm the judgment of the district court.

To say this case was tried in an unorthodox manner is an understatement. No live testimony was presented at trial. Lindsley had died, and his estate presented only a "stipulation," in the form of an offer of proof, as to what one witness would say. For some reason, the defendants put on no evidence at all.

The witness whose testimony was outlined in the stipulation was Ivan Burkheimer, a local real estate agent, who had been involved in the Anderson-Lindsley contract. According to the stipulation, Burkheimer would testify about the attempt by Lindsley, after he had been served with the forfeiture notice, to sell the property to the Fausnaughs. He would also testify that the Andersons and Lindsley had investigated a possible line of credit and had consulted an accountant about the proposed "fifty-fifty" arrangement. But Burkheimer's testimony, even though uncontroverted, provided virtually no details of the alleged agreement. In relevant part, the stipulation was as follows:

> That thereafter the matter and status were discussed between Mr. Lindsley and Mr. Anderson on several occasions between October 20 and November 15, 1981, in Mr. Burkheimer's presence at the bowling alley and on one occasion at the Moose Hall in Mason City. At these meetings Mr. Anderson expressed his desire to get back to the bowling alley business having been out of work for some two months. Anderson's consent to the Fausnaugh transaction—to the pending Fausnaugh transaction was requested by Mr. Lindsley and Mr. Anderson refused saying that he preferred to get back into the business with Lindsley and that he could act as manager of the bowling alley, part of it, while Mr. Lindsley could run the bar.

> Prior to November 15, 1981, they, Lindsley and Anderson, had agreed to own and operate the Family Bowl as 50–50 partners after November 15, 1981, and to allow the 30-day forfeiture period to expire in order to resolve the problem of the Wright contract [an earlier attempted sale by Lindsley].

> This witness [Burkheimer] accompanied both parties to the office of Jack Diercks, a Mason City accountant, for the purpose of setting up their bookkeeping system and that he accompanied them to the United Central Bank in Mason City to discuss their obtaining an operating loan so they could finish paying the bills which Mr. Lindsley had incurred by remodeling the property immediately after taking possession.

No written evidence of this agreement exists.

■ We suggested in *Peterson* that, to specifically enforce an oral agreement for the sale of real estate, at least a "bare bones" contract must be established. 355 N.W.2d at 31. Here, the plaintiff's evidence does not provide even the barest essentials. For example, how much was Lindsley to pay the Andersons for his half; how was it to be paid—in cash or by installment contract; if by contract, how long would it run; what interest would be payable; and would Lindsley get credit for the amounts he had paid under the first contract between them?

■ A proponent of an oral agreement for the sale of real estate must establish it by a preponderance of clear, satisfactory, and convincing evidence. *Peterson*, 355 N.W.2d at 29. This oral agreement was notable in its total lack of such details. We do not agree with the court of appeals that such failure may be obviated by looking to a subsequent sale, to establish a value for the property, and then merely decreeing a fifty-fifty ownership on the basis of that equity.[1]

1. The court of appeals computed the parties' "equities" as follows: It noted that the sale by the Andersons to the Fausnaughs (which occurred after the alleged oral agreement) was for $400,000. Using that price as the value of the property as of the time of this alleged oral agreement, it then determined that Lindsley's "equity" as of the time of the oral agreement

We conclude, as did the district court, that the alleged oral agreement was so lacking in essential details as to be unenforceable. We vacate the court of appeals decision and affirm the district court.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.

was $162,100 ($400,000 less the $237,900 owed by Lindsley to Anderson under their original, written contract). It then determined the Andersons' "equity" as of that time to be $100,000 ($237,900 owed to the Andersons by Lindsley less the $137,900 the Andersons still owed on the property). Under this computation Lindsley acquired $162,100 "equity" on the basis of a $12,100 investment.