CATHARINE CLARITY *et al.* V. MICHAEL SHERIDAN *et al.*, Appellants.

**Partition of Decedent's Estate: When Allowed:** BOND NOT RECEIVABLE. Such partition proceeding may be begun before it is determined whether the personalty will pay debts, but no decree can be rendered till that question is settled, though petitioners give bond to pay all demands against the estate. *Snyder v. Snyder*, 75 Iowa, 255; 39 N. W. Rep. 297, *followed.*

**Adverse Possession:** INSANITY. Title by adverse possession can not be acquired against a person insane.

**Transactions with Decedent.** When plaintiff testifies to one transaction with decedent, defendant's right to testify is limited to the same transaction.

**Evidence Insufficient** to show that deed was without consideration and not delivered.

*Appeal from Allamakee District Court.*—HON. W. A. HOYT, Judge.

TUESDAY, MAY 22, 1894.

PLAINTIFFS and defendants are the only heirs at law of their brother James Sheridan, who died, intestate, April 27, 1891. Plaintiffs alleged that James Sheridan died seized of the following described real estate: The west half of the northeast quarter, and the northeast quarter of the northwest quarter, and the south half of the northwest quarter, and the north sixty acres of the southwest quarter, all in section 4, township 96 north, of range 6 west, fifth principal meridian, containing two hundred and forty acres. Also, the southeast quarter of the southwest quarter of section 33, township 97, range 6 west, fifth principal meridian, containing forty acres, all in Allamakee county. Plaintiffs' abstract shows title in the deceased to all of said land and includes a deed from the

defendant Michael Sheridan to James Sheridan for all of said lands in section 4, which deed is dated and acknowledged September 9, 1876, and filed for record and entered for taxation May 26, 1891. Plaintiffs ask partition of said lands. The defendant Michael Sheridan alone answered. He admits that James Sheridan died seized of said forty acres in section 33. He denies that James died seized of the other lands described, and denies that he executed said deed to James. He also alleges that said deed was without consideration, was never delivered, and that he has been in adverse possession of the land described in said deed for more than twenty-five years, and has paid all taxes and made lasting and valuable improvements thereon; wherefore, he asks that said deed be canceled. In an amendment to his answer, he alleges that the estate of James Sheridan is unsettled, that debts and costs against said estate have not been paid, that there is no personal property out of which to pay the same, that a proceeding is pending to sell part of said real estate to pay debts, that the year allowed for filing claims had not expired, and that all the real estate of the deceased would be required to pay debts; wherefore, he asks that the plaintiffs' petition be dismissed. Plaintiffs in reply deny that the personal property is insufficient to pay debts and costs, and offer to give a bond under section 2396 of the Code, "conditioned to pay all demands against said estate of James Sheridan, deceased, which might properly be chargeable to and payable from the portions of real estate awarded to plaintiffs, to the full extent of the value of said real property set off to them, whenever they are called upon by the court for that purpose." Plaintiffs also say in reply that James Sheridan became insane about the twenty-fifth day of January, 1877, and remained insane until the time of

his death. Decree was rendered in favor of plaintiffs
as prayed, and referees appointed "to make partition
of said real estate, and to set off his or her share in the
severalty to any of said heirs who shall file with the
clerk of this court a bond in the sum of two thousand
dollars for the benefit of the estate, conditioned that the
makers thereof will pay all demands against said estate
to the extent of the value of the share thus kept from
sale, but not to exceed one fourth of all demands
against said estate for each share." The defendant
Michael Sheridan appeals.—*Reversed*.

*F. S. Burling* and *M. B. Hendrick* for appellant.

*Dayton & Dayton* and *J. H. Trewin* for appellees.

GIVEN, J.—I. Though denied in the answer, there
is no dispute in the evidence but that appellant did
sign and acknowledge said deed to James Sheridan for
all the lands described in the petition, except said forty
acres in section 33. We first inquire whether said
deed is without consideration.

The following facts appear without question, or
are fairly established by the evidence. Michael Sheri-
dan came to Allamakee county in 1856, and James in
1857. Each had a small sum of money, Michael hav-
ing from three hundred dollars to five hundred dollars,
and James one hundred dollars or more. The forty
acres in section 33, and a part of the other lands de-
scribed in the petition, were purchased, and the broth-
ers, being unmarried, went to live together on the land
other than said forty. The other tracts described were
afterward purchased and added to said home tract,
constituting the home farm of two hundred and forty-
eight acres. Another tract, known as the "Taylor
Farm," and of about equal value with the home farm,
was also purchased. The title to all these lands, ex-
cept the forty in section 33, was taken to Michael. The

brothers continued to live and work together in farming these lands up to 1877, Michael taking principal charge of the business management of their farming operations. On September 9, 1876, Michael signed and acknowledged the deed conveying to James all of the lands described in the petition, except said forty acres in section 33, and which at that time constituted the home farm. About November, 1876, James began to show symptoms of insanity, and on the twenty-fifth day of January, 1877, he was adjudged insane, and sent to the hospital. He continued insane up to the time of his death. Michael continued to reside on the farm, and to use the same in all respects as his own. Appellant contends that he signed and acknowledged said deed solely for the purpose of pacifying and gratifying his brother James; that the land described therein, as well as the Taylor farm, belonged to appellant; and that he received no consideration whatever for the lands described in the deed. Appellees contend that all the lands, including the Taylor farm, were purchased by means derived from the joint labor and management of the two brothers, and that they had equal interest therein. That a division was agreed upon, Michael to take the Taylor farm and James the home farm, and that the deed in question was executed in pursuance of that agreement. There is but little, if any, testimony to sustain appellant's claim, other than his own, much of which, we think, is clearly inadmissible, as it relates to transactions between him and his deceased brother. There is no evidence but his to sustain the claim that the deed was given to pacify James. The plaintiff Catharine Clarity testified to transactions between the brothers with respect to the delivery of the deed, and it is contended that thereby the way was opened to Michael to testify to all transactions between him and his brother touching the purchase of the lands and the execution of the deed, as

well as the transaction claimed to have constituted a delivery. We are of the opinion that it was not competent for appellant to testify to any transactions between him and his deceased brother other than that related by Mrs. Clarity with respect to the delivery of the deed. The decided preponderance of the evidence, even without excluding that of appellant, is in favor of the conclusion that the brothers were equally interested in the land, and that the deed in question was executed in consummation of a division agreed upon between them. It would be remarkable that, after so many years of joint labor, in which each had been equally industrious, Michael should own all these valuable lands, while James would have nothing but the forty acres, for which two hundred dollars had been paid. We are in no doubt but that there was a valuable consideration for the deed.

II. We next inquire whether said deed was ever delivered. The plaintiff Catharine Clarity testifies in substance as follows: That, at the time when James was stopping at her house, Michael left the deed on the table to give to James; that James received it, and had it read by one of the girls; that when Michael brought the deed, he said it was for James, and that, after the deed was read over, James took it; that James had it read over several times after, and that Michael was present at one time when it was read. She states that James gave her the deed to take care of for him, and that she put it in the bureau, and kept it until after the death of James, when she had it recorded, and then delivered it to the administrator. J. F. Clarity testifies that he saw James have the deed before he became insane, and was present when James asked to have it read; that James and Michael were both present the second time he saw it, and talked about the deed, and that he had heard Michael talk about the division of the land several times. The de-

fendant was asked on his examination as follows: "You may state whether or not, at the time Exhibit A was left with Catharine Clarity, there was any intention to convey the land therein described to James Sheridan." To which he answered, "No, sir; there was not." He was also asked, "State whether or not you ever directed her to deliver it to James Sheridan." To which he answered, "No; I did not." Upon further examination, he was asked, "Did you give the deed you made to anybody?" To which he answered, "No, sir." Appellant, in explanation of why the deed was at Clarity's, states that he kept his trunk with all his papers at Clarity's house, in care of Mrs. Clarity. It is certainly strange that the deed was taken to Clarity's, and allowed to remain there for so many years, if it was not intended to be delivered to James. We do not here refer to all the testimony upon this question. It is sufficient to say that we think it entirely clear that the deed was not only intended to be, but was in fact, delivered to James Sheridan. The fact of its remaining unrecorded for so many years is explained by the protracted insanity of James.

III. Appellant's further contention is that this action was prematurely brought, and must, therefore, be dismissed. It is claimed that as the year for filing claims had not expired, and as there was not sufficient personal property to pay debts, and the estate was unsettled, there could be no partition of the land until after it was determined what part of it would be required for the payment of debts. In *Snyder v. Snyder*, 75 Iowa, 255, 39 N. W. Rep. 297, it was held that, while partition ought not to be ordered until it is determined that the personal estate is sufficient to pay debts, the action for partition may be begun before that time. While the condition of the estate was such that partition should not have been ordered, it does not present grounds for dismissing the case.

It was only necessary that the entering of the decree should be postponed until it was determined what part of the land would be required for the payment of debts. The plaintiffs, as we have seen, offered to give bond, and partition was granted to any of the heirs who would give bond as prescribed in the decree. Section 2396, under which this bond was offered and ordered, is found in that part of chapter 3, title 16, providing for the sale of personal and real property for the payment of debts, and is as follows: "Any person interested in the estate may prevent a sale of the whole or any part thereof, by giving bond to the satisfaction of the court, conditioned that he will pay all demands against the estate, to the extent of the value of the property thus kept from sale, as soon as called upon by the court for that purpose." Clearly, the purpose of this section is to prevent a sale of the property by putting the bond in the place of the property, and it is only where a sale is to be made to pay demands against the estate that this section applies. In this action no sale is asked, nor could any be ordered, for the payment of debts against the estate. This is a proceeding for the partition of the lands between the heirs. The only authority for taking a bond in such an action is found in section 3305 of the Code, providing that the court may require any of the parties, before receiving the amount arising from the sale in an action for partition, "to give satisfactory security to refund such moneys with interest in case it afterward appear that such parties were not entitled thereto." Clearly, the bond offered and authorized in the decree was not contemplated by this section. Had bond been given in the pending proceeding to sell land to pay debts, that would have put the bond in the place of the land, and so far freed the land sought to be sold from the debts as to have admitted of its being partitioned, but we think that such a bond is not

authorized in an action for partition. The real estate is chargeable with the debts of the estate, and it is only by payment, or by the presence of sufficient personal estate, or by giving a bond under said section 2396 in the proceeding to sell the property, that the real estate becomes so far discharged from the debts as to be open to partition between the heirs. Our conclusion is that, while the action was not so prematurely brought as that it should be dismissed, the court had no power to order partition upon the giving of bond as it did. Therefore, the decree ordering the partition must be set aside.

IV. Appellant contends in argument that the plaintiffs' cause of action for partition is barred by the statute of limitations. Plaintiffs rely upon a chain of title to the deceased, which we have seen is valid, and vested him with all the lands of which partition is sought. Appellant complains that the action was prematurely brought, and also that it is barred because not brought in time. It is the appellant's cause of action, pleaded by way of defense, rather than the plaintiff's cause of action, that is barred. Because of the continued insanity of James, appellant's possession was not adverse, and does not give him title as against his co-heirs. Plaintiffs' right to ask partition did not arise until the time of James' death, and that right was not barred at the commencement of this action. Our conclusion upon the whole record is that the decree of the district court appointing referees, and ordering partition of the lands described in plaintiffs' petition, must be reversed, and the case remanded for a decree partitioning so much of said real estate as remains after payment of the debts and costs of administration of the estate of James Sheridan. REVERSED.