FRED MEHLISCH, Appellant, v. A. J. MABIE, Administrator,
Appellee.

NEW TRIAL: Grounds—Newly Discovered Evidence—Impeaching
1 Evidence.    Newly discovered *impeaching* evidence is not
grounds for new trial.   So held where, in an action on a claim
against an estate, a witness testified that she was working at
the home of deceased at a certain time, and that at such time
deceased gave claimant a check, and that the parties then
agreed that the check was to constitute a full settlement be-
tween them, the newly discovered evidence being to the effect
that at said time the witness *was not at the home of deceased.*

WITNESSES: Examination—Rebuttal—Leading Questions.   On re-
2 buttal, to disprove the making of statements attributed to the
witness by others, it is proper to put the question *in a direct*
form, to wit: "Did you say to them at that time and in that
conversation that you had settled up?" or, "Did you tell them
you had settled up and had all your money, or anything of that
kind?"

WITNESSES: Examination—Leading Question.   It is not a *leading*
3 question to ask a witness: "Did you tell them you had settled
up and had all your money, or anything of that kind?" or,
"State whether or not you told anybody that evening that you
had settled."

WITNESSES: Competency—Transactions and Communications with
4 Deceased.   A question which does not itself reveal the fact that
it calls for transactions with a deceased, should not be exclud-
ed unless the objector shows such to be the fact.

WITNESSES: Competency—Transactions with Deceased—Opening
5 Door to Interested Witness.   Testimony by a witness *other than
an administrator*, etc., as to a transaction with the deceased,
though introduced *on behalf* of the administrator, does not open
the door to an interested witness, otherwise incompetent, to tes-
tify to the same transaction.   See Section 4604, Code, 1897.

PRINCIPLE APPLIED:   Trial of claim against an estate.
The administrator filed no pleadings, but claimed that the mat-
ter in controversy had been fully settled between claimant and
deceased.   To prove this, the administrator called a witness who
testified that, on a certain occasion, she was present when de-
ceased and claimant figured their accounts, and that, at the

end thereof, deceased gave claimant a check for an amount
which she did not learn, and that she heard claimant and de-
ceased agree and say that the check was in full settlement of
their affairs. *Held* not to open the door to claimant to testify
to the same transaction.

EVANS, J., because of the insufficiency of the evidence to sup-
port any verdict for claimant, dissents to the order of reversal.

*Appeal from Marshall District Court.*—B. F. CUMMINGS,
Judge.

SATURDAY, DECEMBER 16, 1916.

REHEARING DENIED FRIDAY, JUNE 22, 1917.

Claimant, Fred Mehlisch, filed a claim against the es-
tate for balance due for labor as a farm hand for decedent,
and for balance alleged to have been due claimant from
deceased while associated with him as a partner in farming
and raising stock on the land of deceased. There was a
trial to a jury, and a verdict for the estate. The plaintiff
appeals.—*Reversed.*

*Bradford & Johnson,* for appellant.

*F. L. Meeker* and *C. H. Van Law,* for appellee.

PRESTON, J.—1. The appellant, or his attorney, seems
to have had some trouble in stating the plaintiff's claim and
the nature of it. The claim was prepared by an attorney.
The claim as first filed, on June 21, 1913, was for $1,218.71,
"on open account and for goods and merchandise sold." It
is claimed by appellee that the items making up this ac-
count were items or articles sold at public sale. On March
16, 1914, plaintiff filed an additional claim for $2,020.68,
balance of money alleged to be due plaintiff from the es-
tate because of the shipment of stock by plaintiff and de-
ceased as partners, and for the proceeds thereof. The to-
tal for the debit side of this account is $9,815.56, with cred-

its of $3,200, one half the balance of which plaintiff claims to be due him, a certain amount for balance due on stock and grain bought and sold, etc., also an account for services alleged by plaintiff to have been performed by him for deceased, commencing in the year 1903 and ending in the year 1909; but he does not claim to have worked all the last two years. The charges are by the year, and each year's credits are given for a part alleged to have been cash payments to plaintiff. The balance of this account for wages as claimed is $1,131.25.

It is thought that the manner of plaintiff's presenting his claim is a circumstance against him, and it may be so; and yet it seems to some of us that there is some excuse, in view of the fact that he kept no books, and whatever books there were, were kept by deceased, and that the shipments of stock, in several instances at least, seem to have been settled soon after the shipment, and when the money had been received and divided. However, this was a matter for the consideration of the jury, if there were any discrepancies in his account. It sometimes happens that attorneys, in preparing such claims, which are sometimes lengthy and consist of many items, are not as careful as they might be. Of course, in so far as there was a conflict in the testimony, it was a question for the determination of the jury.

The substance of appellant's claim is that he established by evidence when he started to work for deceased, how much he was to receive, how long he worked, and how much he was paid on the work, and that appellee did not dispute his work, and showed no payments other than those appellant had given him credit for; and his claim, boiled down, is that the wages earned amounted to $1,980, and that he had been paid thereon $848.75, leaving a balance of $1,131.25, and that he proved shipments of stock by the firm and remittances or credits received, and that deceased

sold stock from the place belonging to the firm, for which he owed appellant one half of $4,908.28; that appellant bought stock for the place, for which deceased owed him one half the sum of $1,059.67; that deceased owed appellant a note of $135, and $115 on another note; that McMannes owed appellant for farming implements of plaintiff sold at the sale; and that the balance due Mehlisch on the entire account, after allowing all credits, including an item of $413 credit, which will be referred to later, is $1,747.37. Appellant had, in some of the accounts, given deceased credit for a check of $600 as of date May 24, 1913, but appellant now claims that that is a mistake, and should have been a check of $413, and of date November 18, 1912.

It is appellee's contention that there

1. NEW TRIAL: grounds: newly discovered evidence: impeaching evidence.

was a settlement on the last named date by the payment of a check of $413, and that this settlement between deceased and plaintiff was a full settlement of all their affairs; and this really seems to have been finally the main controversy in the case. It is true that defendant, as he had a right to do, required plaintiff to make the proof of his claim, and the plaintiff's testimony in establishing this claim is found in 64 pages of the abstract, while all the evidence for the estate is found in about 8 pages of the abstract. As stated, after the evidence was in, there seemed to have been less controversy over the account as plaintiff alleged he had proved it, than over the question of settlement. It should be stated that the administrator filed no pleading, but relied upon the statutory denial. The question was not raised in the district court, nor has it been here, as to whether the settlement and payment relied upon by the defense should have been pleaded under Section 3340, Code, 1897, and claimant did not object to the testimony as to the alleged settlement upon the ground that the evidence was irrelevant, so that we do

not determine that point. But the larger part of the time consumed in the trial was in proving plaintiff's claim. The evidence as to the settlement came at the last, and the one witness, Mrs. Spence, upon whose testimony the appellee relies largely to establish the alleged settlement, came as substantially the last, if not the last, witness for defendant; so that appellant was not advised that such an issue was in the case until near the close. This witness, Mrs. Spence, testified in substance that, on the date named, when the $413 check was given, she was present at the transaction between deceased and plaintiff at the home of McMannes, where she claims she was then working, and that the substance of the conversation was that this was a settlement of all matters between the parties, although, as stated, the appellant claims there was more than $2,000 due him at that time. The plaintiff was used as a witness by the defendant to identify the $413 check, but no cross-examination of plaintiff was permitted as to the transaction for which the $413 check was given. The plaintiff denied that this check was given in settlement of the account and denied that there was any settlement, but his examination on this point is claimed by claimant to have been unduly restricted, and perhaps it was so. There was the testimony of two or three witnesses as to statements alleged to have been made by claimant that he was going to settle with McMannes, and others that he had settled. This evidence as to verbal declarations is, under the rule, which is well understood, not the strongest evidence, although, of course, a matter may be so frequently stated and so well understood that it may be entitled to great weight. But, outside of these two or three verbal admissions, the question as to the settlement, which, as stated, turned out to be the vital point in the case, rested upon the testimony of the plaintiff, an interested witness, and the witness Mrs. Spence, supposed to have been a disinter-

ested witness. Plaintiff, testifying as a witness, did not claim that Mrs. Spence was not present at the place she claimed, but he did deny that the statements were made, and denied the transaction. In the motion for new trial, however, he claims he did not know that she did not work there at that time. In the motion for new trial, plaintiff, under a proper showing, set out the evidence and affidavits of six witnesses, showing newly discovered evidence, upon which claimant asked a new trial. The testimony of these witnesses tends very strongly to show that Mrs. Spence, at the time stated, was not working at the McMannes home, and was not present there at the time she claims there was a settlement between plaintiff and deceased, but that she was working at another place for a Mrs. Mabie, because of an operation on Mrs. Mabie, who was a relative of the administrator in this case; that she had been working there from sometime about the middle of October until about the first of January afterwards. A physician testified as to the date of the operation, which was October 19th, and that Mrs. Spence was there doing the work; that he made professional calls on Mrs. Mabie on November 18th and substantially every day up until the 6th of December; that he knows that Mrs. Spence was at Mabie's all the time doing the housework; and that he dropped in several times in November not shown by call book, when he was passing, and that Mrs. Spence was there. The nurse who was caring for Mrs. Mabie testifies that Mrs. Spence was at Mabie's from October 19th to after January 1st. Mrs. Keople, a neighbor of McMannes', says that she knows Mrs. Spence was not working for McMannes in November. She testifies who was working there, and that she herself worked a part of the time. Mr. Keople testifies that he is sure that Mrs. Spence was not working for McMannes in November; that witness was working there at that time. Another neighbor testifies that she knows Mrs. Spence was

not working for McMannes in November. Another witness,
a tenant of McMannes', says he knows that Mrs. McCor-
mick worked for McMannes. This is the substance of the
alleged newly discovered evidence.

Counsel for appellee cite cases holding that a new trial
will not be granted where the alleged newly discovered evi-
dence is impeaching testimony, or where it is cumulative.
The cases are for the most part collected in the case of
*Smith v. Smith,* 160 Iowa 111, at 117. A majority of the
court are of opinion that this evidence was impeaching,
and that the court properly overruled the motion, in so far
as it relates to this ground.

2. The trial court unduly restricted
2. WITNESSES: the plaintiff in excluding the evidence of-
examination:
rebuttal: lead- fered by him. Some of the questions are
ing questions.
close as to whether he was a competent wit-
ness as to certain of the transactions, because of Section
4604, Code, 1897. The record contains a great many in-
stances where matters which claimant sought to prove were
excluded upon objection. We shall not attempt to set out
all of them. Ray Keople, a witness for appellee, was per-
mitted to testify that plaintiff stated, at a certain time and
place, that he (claimant) had just settled with McMannes.
James Johnson, a witness for appellee, was permitted to
testify in substance, that, in November, 1912, he heard
claimant say, when they were eating supper, that he had
been over to McMannes' and he and McMannes had settled
up. In rebuttal, plaintiff was put upon the stand, and
we have this record:

"I heard the testimony of Mr. Keople and Mr. Johnson
in regard to a conversation they claim took place at the
supper table and their testimony in regard to it. Q. Did
you tell them you had settled up and had all your money,
or anything of that kind? (Administrator objects as lead-
ing and suggestive. Sustained, and claimant excepts.) Q.

You may state whether you told anybody there that even-
ing that you had settled up with Mr. McMannes. (Same
objection, ruling and exception.)   Q.   Did you at any time
in that conversation say to them that you had settled up?
(Objected to as leading.  Sustained, and claimant excepts.)
Q.   What had you been doing over there at Mr. McMannes'?
(Administrator objects as incompetent under the provisions
of 4604.  Sustained, and claimant excepts.) . Q.   You may
state whether when you were at McMannes' that day you
did figure up with Mr. McMannes your account between
you.  (Administrator objects for the same reason.  Sus-
tained, and exception.)   Q.   You may state whether or not
the figures of your figuring up were left with Mr. Mc-
Mannes.  (Same objection, ruling and exception.)"

     The abstract shows that the testimony was here closed.
At this point, the claimant moved to strike from the testi-
mony all the evidence given by the witness James Johnson
(just set out), James Barton, Pearl Spence and Carl Da-
mon, offered in behalf of the administrator, because the
court refused to permit the claimant to testify as to the
transaction.

     "Court:  The court did not refuse to permit the claim-
ant to testify as to the conversation testified to by those
witnesses, but the court did refuse to permit the claimant
to testify as to the transaction with a deceased person.
The motion is denied.  Plaintiff excepts."

     We shall not stop to set out the testimony of the others.
But we think the court was in error in its conception of
the testimony of the witness Johnson at least.  But we
shall not go into that further now, but consider the record
before set out.  The principal objection to these questions
was that they were leading.  It must be remembered that
this evidence was offered in rebuttal, where it was sought
to show by plaintiff that statements alleged to have been
made by him and testified to by other witnesses were not

true; that is, that he claimed they were not true, and de-
sired to contradict their testimony. So that it was, under
the rules, permissible to put the questions direct, and often
it is permissible to put a leading question for that purpose.

3. WITNESSES:
examination:
leading ques-
tion.

Furthermore, we think these questions
were not leading. We understand the rule
to be that a leading question is one that
suggests the answer. The first question we
have set out to be leading would be framed in this way, as
applied to what counsel for claimant would naturally want
the witness to answer: "You did not tell them you had
settled up and had all your money?" The question as pro-
pounded asks him the straight question as to whether he
did tell them that he had settled up, or anything of that
kind. The next question is: "State whether or not you
told anybody there that evening that you had settled, etc."
The next, whether at any time in that conversation he said
that he had settled. We think none of these are leading,
and we think they were perfectly proper in rebuttal.

4. WITNESSES:
competency:
transactions
and communi-
cations with
deceased.

The next question is: "What had you
been doing over there at Mr. McMannes'?"
The administrator objected to this because
incompetent under Section 4604. But the
witness is not objected to, and the question
itself does not show that it was a personal transaction, and
therefore incompetent. The objecting party must show,
if the question itself does not, that it does call for a per-
sonal transaction. The inquiry may have been in regard to
a personal transaction, but it does not so appear, from the
question or otherwise.

As before stated, the question of a settlement was final-
ly the vital point in the case, and two witnesses at least,
and perhaps another, were permitted to testify as to state-
ments alleged to have been made by the plaintiff in regard
to a settlement, and he was not permitted to deny it at all.

We think we ought not to take the time or space to go through each instance where appellant claims the examination of the witness was unduly restricted. Appellant as a witness was asked as to the purchase of certain live stock, etc., of others than McMannes, deceased, that was brought on the place, and he was asked if he bought certain implements at a sale of McMannes' goods by others, and as to a sale of property of his own, and as to who bought it other than McMannes, but he was not permitted to answer; and it is argued by appellant that, if he could not prove by his own testimony that he worked this farm during the partnership, he could at least prove that no one else did, and that, if he could not prove by his word that he bought certain property at a sale conducted by someone else, then he certainly could prove that no one else did, and that, if he could not prove by his own testimony that McMannes bought appellant's property at a sale conducted by others, then he could prove that no one else did so, and as authority, appellant cites *Walkley v. Clarke*, 107 Iowa 451, which seems to so hold. See, also, *McElhenney v. Hendricks*, 82 Iowa 657.

5. WITNESSES: competency: transactions with deceased: opening door to interested witness.

3. Mrs. Spence testified in reference to the alleged settlement and the giving of the $413 check to plaintiff on November 18, 1912, by deceased:

"I was employed by McMannes in the summer of 1912, and went there along in July and stayed along about the first of December. I am slightly acquainted with Mehlisch. He came there to McMannes' late in the fall of 1912, where I was keeping house for them. It was after dinner. McMannes and Mehlisch were in the dining room, and McMannes' wife and myself were present. His wife has died since that. Mehlisch stayed about an hour. They were transacting business and figuring up accounts. When they got through, he gave him a check and asked him

if that would square them in full, and Mehlisch said, 'Yes.'
McMannes gave Fred a check and asked if that would set-
tle—called it 'square them'—in full, and Fred said, 'Yes.'
I don't know the amount of the check. It wasn't very long
after McMannes gave him the check that he left the place.
I could not tell you the date, but it was in November before
Thanksgiving."

To meet this testimony, plaintiff was called to the stand
in rebuttal, and testified to his claim about the mistake in
regard to a certain $600 check and the date of it, and its
connection with reference to the $413 check, and was then
asked:

"Q. What took place between you and Mr. McMannes
at his house the day Mrs. Spence says you was there? (Ad-
ministrator objects as not proper rebuttal, witness in-
competent under the provisions of Section 4604 of the Code,
incompetent, immaterial and irrelevant. Sustained. Claim-
ant excepts.) Q. You may state how the check of $413
that you received at that time happens to be for that
amount. What took place there in the presence of Mrs.
Spence, the woman who has testified in regard to that, and
if she was there? (Same objection, ruling and exception.)
Court: Are you not calling for a personal transaction?
Mr. Bradford: I understand the rule is, when the admin-
istrator attempts to show a thing of that kind, I have a
right to show what took place at that time. I may be
wrong. Court: I think you are. (Complainant excepts.)"

The appellee relies upon the two cases of *In re Estate
of Brown,* 92 Iowa 379, and *Whisler v. Whisler,* 117 Iowa
712, to sustain the ruling of the court at this point. In
the first case cited, it was held that, where a check issued
by a decedent is put in evidence in behalf of the estate, it
does not constitute testimony of the administrator, within
the meaning of Section 4604, Code, 1897, so as to admit
the evidence of the claimant who receives such check as

to what the check was given for. And in the *Whisler* case, the holding was that the admission of a receipt or deed or other writing of a deceased person is not sufficient to admit the testimony of a living witness otherwise incompetent under the statute, and that this rule applies to books of account of deceased. But we think the two cases cited do not quite meet the situation here presented. The present case is more like *Canaday v. Johnson*, 40 Iowa 587, where it was claimed that the door was opened for evidence in rebuttal as to personal transactions between deceased and the party to the action, because another party (the widow) had testified as to the same transaction inquired about, and it was there held that the evidence was not admissible. There is, we think, some basis for the argument that the last clause in Section 4604 has reference to evidence introduced on behalf of the administrator, heirs at law, etc., rather than the testimony of such person himself, because, as to the administrator at least, he is usually a disinterested person, without personal knowledge of transactions between deceased and other persons. The same reasoning, perhaps, would apply to a guardian, and some of the other persons named in the exception. And there is reason, too, for the argument that, where one party has opened up one side of a transaction, the other side should be permitted to meet it. But the statute does not so read, and the question seems to have been foreclosed by the *Canaday* case, supra. This case, so far as we are able to discover, has not been before questioned since it was decided, some 40 years ago. Our conclusion is that the court ruled correctly at this point.

We have, perhaps, set out too many of the numerous questions where testimony was excluded, and we shall not take the time to refer to others. Enough has been set out to show the general tendency of several others not set out.

For the reasons given, the judgment is reversed and

the cause remanded for new trial.—*Reversed and remanded.*

GAYNOR, C. J., DEEMER and WEAVER, JJ., concur.

EVANS, J. (dissenting). I do not concur in the reversal of this case. Upon all the evidence introduced and offered by the plaintiff, I feel sure that no verdict in his favor could properly have been permitted to stand.