CHEROKEE STATE BANK, Appellee, v. R. M. LAWREY, Appellant.

WITNESSES: Transaction With Insane—Fraud Perpetrated by Insane Payee of Note. In an action on a promissory note by the indorsee thereof, the maker is not a competent witness to testify to the fraud perpetrated on him by the payee in the execution of the note, when, at the time of the action, said payee is insane.

Headnote 1:  40 Cyc. p. 2298 (Anno.)

Headnote 1:  28 R. C. L. 492.

*Appeal from Cherokee District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 15, 1927.

Defendant appeals from a judgment rendered on a directed verdict in favor of the plaintiff upon a promissory note.— *Affirmed.*

*Claud M. Smith,* for appellant.

*Molyneux, Maher & Meloy,* for appellee.

MORLING, J.—Defendant pleaded fraud perpetrated by the payee of the note, who is now insane. Defendant offered his

own testimony to prove the alleged fraudulent representations by the insane payee. This offer was rejected, under Section 11257, Code of 1924, with the result that there was no evidence to support the claim of fraud, and a verdict for plaintiff was directed. Defendant's contention is that the payee of the note was plaintiff's agent, and that, therefore, defendant was not incompetent to testify to personal transactions with him. The note sued upon was payable to the order of L. R. Stanosheck, and indorsed by him. It was the second renewal of a note originally given September 25, 1922, and taken by plaintiff September 29, 1922. The first renewal was dated November 22, 1923, and taken by the plaintiff November 27, 1923. The renewal in suit was dated August 27, 1924, and taken by plaintiff September 16, 1924. It is not claimed in the answer that the plaintiff was in fact the payee of either of the notes. It is alleged that the original note was executed to Stanosheck, and that the first renewal was to take its place,—in substance, that the third note was obtained by Stanosheck by his fraudulent representations to defendant, and that Stanosheck "took the note which plaintiff signed, which is sued on herein, and immediately turned it over to the plaintiff herein, without consideration therefor passing from the plaintiff herein to the said Stanosheck or to anyone else;" that the fraudulent transaction was "procured by the plaintiff herein and the said Stanosheck, for the sole and only purpose of cheating * * * the defendant * * * " Plaintiff's cashier, who says he did not act in the matter, testified that Stanosheck was only a customer; that Stanosheck renewed the original note, and also turned in the note sued on for credit, "and during all of those transactions * * * was acting for the Cherokee State Bank; procuring renewals of the obligations,—as I remember, he did that,—I can't be positive." He also testified that Stanosheck was not the agent of the bank in connection with any of the notes; that the previous notes were canceled and turned over to Stanosheck when renewed. The president of the bank testified that plaintiff was the owner of the note in suit at all times since it was given, and that it was given to the bank in exchange for a note which the bank already had; that plaintiff was the owner of all the notes continuously, except the time that elapsed between the time Stanosheck obtained renewals and presented them to plaintiff for exchange for

the old notes. When he got renewals, they came in to take up the old notes. The bank never relinquished ownership of the obligation, from the time of taking over the first note. He says that the bank never hired Stanosheck to collect the paper; that he was not in their employ.

"So far as I am aware, he was working for himself, in getting this paper renewed. * * * I rather think we were urging him to protect the bank on the paper. I don't think we urged him to renew the paper, but we urged him to either pay it or get a new note."

Defendant, as a witness in his own behalf, was asked to detail the facts and circumstances under which he signed the note in suit; to state everything that took place between him and Stanosheck with reference to its execution. There was no offer of proof or statement of what his testimony would be, but it was assumed that he was proposing to testify to the matters set up in his answer. The answer does not allege that the false representations were made by the plaintiff. On this record, while the testimony of the bank officers and their conclusions are somewhat confused and inconsistent in matters of opinion, it must be held that the defendant was undertaking to prove by his own testimony false representations made to him personally, not by the plaintiff, through a mere agent, but by the original payee of the note, the person to whom it was delivered. A contrary finding could not be sustained. It must be held that such payee indorsed the note in suit to plaintiff, and thereby took up the preceding obligation. Plaintiff was the assignee of Stanosheck. Stanosheck, at the time of the trial, was insane. While a mere agent of a deceased person is not within the terms of "the dead man's statute," making parties incompetent to testify to personal transactions with him (*Reynolds v. Iowa & Nebraska Ins. Co.*, 80 Iowa 563; *Bellows v. Litchfield*, 83 Iowa 36; *Jamison v. Auxier*, 145 Iowa 654), we think that Stanosheck, on the facts before us, was both within the terms and the spirit of the statute. He was personally interested in the transaction. He was regarded as, and was in fact, the payee of the note. The plaintiff got its title to the note from Stanosheck. The statements alleged to have been made by Stanosheck to defendant were a personal transaction and communication. *VanMeter v. Goldfarb*, 317 Ill. 620 (148 N. E. 391) ; *In re Barrett's Estate*, 48 S.

D. 302 (204 N. W. 167). It results that there was no offer to prove by a competent witness the fraud alleged, and no evidence of fraud to go to the jury. The question whether plaintiff was a holder in due course, therefore, did not arise.

The judgment is—*Affirmed.*

EVANS, C. J., and DE GRAFF and ALBERT, JJ., concur.