NEWTON HALDEMAN, Administrator, Appellant, v. JOHN T. MARTIN et al., Appellees.

FEBRUARY 14, 1928.

J. H. Wyllie, for appellant.

Stockman & Baker, for appellees.

MORLING, J.—The question is whether the defendants' pos-

session of the note, under the facts of the case, is presumptive evidence of either payment or gift. Plaintiff's intestate, J. F. Strasser, died August 23, 1924. Defendants, John T. Martin and Leona Martin, are husband and wife. Leona is the daughter of intestate. On March 15, 1920, defendants executed to intestate their promissory note for $14,000, with interest payable March 1, 1930. The petition alleges payment of interest to and including March 15, 1924. Intestate lived at his own home until three or four weeks before his death, when he went to live with his daughter, Leona. Plaintiff was appointed administrator September 11, 1924. Defendant Leona turned over to plaintiff about $20 in money and an unlocked tin box, containing insurance policies, unpaid notes of White's, amounting to something over $100, and an unpaid check for $5.00 or $6.00. She told plaintiff "that was his box that they had down at their house." Decedent also owned a kit of blacksmith tools, worth $60. Decedent appears to have left no other personal property. The record is silent as to real property. There were at least two other children. In December, 1925, plaintiff and one of decedent's sons made a demand on defendants. According to the son:

"Mr. Haldeman said [to Leona], 'I am acting as administrator of the J. F. Strasser estate, and I demand the note of $14,000, the note that you and John gave your father, or the money, and the blacksmith tools.' * * * She said she burnt the note, she didn't have the money, and she didn't know what about the blacksmith tools."

Plaintiff testifies:

"I told her that, as administrator of the estate, I was compelled to make a demand, and I was here for that purpose,—to make a demand,—and I asked her what she was going to do about it; and she said that they destroyed the note, and couldn't pay it, and in reference to the tools, she didn't know about them."

He says that Leona might also have said that she would not pay it, but he does not remember that. Plaintiff and the son then went to a neighboring place, and saw defendant John Martin. The son testifies that plaintiff said to John: "I am acting as administrator for the J. F. Strasser estate, and I demand the $14,000 note you and Leona gave your father, or the money, and the blacksmith tools."

"He said he didn't know anything about it. That was all he said."

Plaintiff testifies that defendant John, in response to this demand, said he had nothing to do with it at all. "He did say it was his wife's business; that it was not his." It appears that the blacksmith tools, at the time of decedent's death, were left on the place occupied by defendants.

Defendants' contention, in substance, is that the plaintiff has the burden of proving his ownership and right of possession; that wrong is not presumed; that defendants' possession raises a presumption of "satisfaction, cancellation, and discharge." They also suggest, but do not argue, gift. The note in question appears to be negotiable. Ordinarily, possession of such paper by the maker, if overdue, raises a presumption of satisfaction. The presumption is not applicable to this case. The note was not due at the time of decedent's death. Decedent was living with defendants. His belongings, if not in their personal possession, were at least on their premises. Their possession in evidence was after his death. The defendants had access to decedent's papers, and may readily have acquired possession of the note, without making payment. Defendants do not plead payment.

Moreover, plaintiff demanded of defendants the note or the money, and the tools. This was an assertion of right to the note hostile to defendants, and could have been understood in no other way. So far from meeting this assertion with claim of ownership on her part, defendant Leona said that she had destroyed the note; that she did not have the money; that she could not pay it. Her statement that she did not have the money or could not pay the note, under the circumstances, carries the inference that she was not denying the rightfulness of demand made upon her, or plaintiff's ownership. If the note had been paid or given to her, she would have said so, instead of explaining, in effect, that she was unable to pay because she did not have the money. She not only did not deny her obligation to pay, but in effect conceded it. The defendant John Martin was one of the signers of the note. It was for $14,000. He knew whether he had paid it or not, or whether it had been given to him or his wife or not. He met plaintiff's demand with the reply that he knew nothing about it, had nothing to do with it, and nothing

to say about it; that it was his wife's business, and not his. It was his obligation to pay $14,000. He knew it. It was his business,—not merely his wife's business. Defendants' failure to meet plaintiff's demand and implied assertion of right with any claim that the right was theirs, amounted to acquiescence in plaintiff's claim and an admission that the note was not paid, was not theirs, and that they were liable on it. *Geddes v. McElroy*, 171 Iowa 633, 647. The evidence contains no suggestion of purpose or reason for making a gift. Corroborative evidence that their possession was not in their own right is found in their .assuming, in the same transaction, a similar and insincere attitude with respect to the tools.

Mere possession of an instrument by the maker under circumstances laying his possession open to suspicion gives rise to no presumption of payment, nor does such presumption arise if possession may be satisfactorily accounted for upon any other reasonable theory than that of payment. If the maker has access to the papers of the holder, and may reasonably have acquired the instrument without payment, there is no presumption of payment. The obligor's possession of a negotiable instrument before due of itself creates no presumption of payment. These rules are peculiarly applicable to the unexplained possession by the obligor of paper held by one who has died. *Crocker v. Thompson*, 44 Mass. 224; *Grimes v. Hilliary*, 150 Ill. 141 (36 N. E. 977); *Mynes v. Mynes*, 47 W. Va. 681 (35 S. E. 935).; *Clymer v. Groff*, 220 Pa. St. 580 (69 Atl. 1119; 14 Ann. Cas. 256); *Arnold v. Arnold*, 124 Ala. 550 (27 So. 465, 82 Am. St. 199); *Erwin v. Shaffer & Curtis*, 9 Ohio St. 43 (72 Am. Dec. 613); 21 Ruling Case Law 127, 128; 8 Corpus Juris 1014. Possession after the death of the holder by one having access to his papers affords no evidence of a gift. *Grey v. Grey*, 47 N. Y. 552; *Union Tr. & Sav. Bank v. Tyler*, 161 Mich. 561 (126 N. W. 713); *Maxler v. Hawk*, 233 Pa. St. 316 (82 Atl. 251, Ann. Cas. 1913B 559); 12 Ruling Case Law 970; 28 Corpus Juris 669. Under the facts of this case, there is no presumption whatever of payment or gift.—*Reversed.*

STEVENS, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.

WAGNER, J., not participating.