HOWARD HAMILTON, administrator of estate of James Bethel, Sr., appellee, v. WILLIAM BETHEL et al., appellants.

No. 51420.

(Reported in 131 N.W.2d 445)

1358

NOVEMBER 17, 1964.

John Mitchell, of Fort Dodge, for appellants.

Hamilton & Schill, of Fort Dodge, for appellee.

GARFIELD, C. J.—This is a suit in equity by Howard Hamilton, administrator of the estate of James Bethel, deceased, for judgment against defendants William and Maxine Bethel, husband and wife, on a promissory note for $9000 made by them February 28, 1950, payable to James and Susan Bethel, William's parents, and to foreclose a land mortgage securing payment of the note. Susan predeceased James leaving a will under which he was sole beneficiary. The defense was that the parents made a gift of the note to William in August 1957. Following trial to the court, there was a decree for plaintiff from which defendants William and Maxine appeal.

It is admitted the note was given for a loan of $9000 the parents made to William at the time it was given. William's

sister, Jean Bethel Johnson, also loaned him $8900 she had saved. William and wife also executed a note to Jean for the $8900. The notes were due February 28, 1970, and bore interest at four percent payable annually. Both notes were secured by a mortgage on an 80-acre farm the makers purchased with proceeds of the loans and $1700 of William's money. (The purchase price was $19,600.) The farm was purchased after William was notified in 1949 to move from the farm he was then renting.

William paid his sister Jean $1100 plus interest on the note she held but paid nothing on the note in suit except the interest for the first nine years. No interest was paid after the instalment due February 28, 1959. In the petition filed in April 1961 plaintiff elected, in accordance with the option given the holder by the terms of the note, to declare the principal due and payable because of failure to pay interest.

Subject to the objection he was an incompetent witness under section 622.4, Code, 1962, the dead man statute, William testified that on a Sunday morning in August 1957 his mother gave him the note and said, " 'That's yours. Me and your daddy wanted you to have it.' " Also that his father said, "You want to hang on to it. * * * Well, they didn't want me to tell anybody they gave it to me, and wanted me to pay interest as long as they lived. * * * Mom wanted me to pay interest as long as they lived. My father didn't say anything." William was the sole witness to the claimed gift of the note.

Subject to a like objection, William and Maxine testified that on February 10, 1960, the former's father was staying with them and told them he did not want any interest on the note and told Maxine to write a check to him for $9000, put on it that the interest and mortgage were paid in full, he would endorse it and it would be their receipt; Maxine then wrote and signed William's name to a check for $9000 with a notation on it "pd in full mortgage"; the father endorsed the check; it was never presented for payment and it is admitted there was not money in the bank with which it could have been paid. The father died April 7, 1960. The mother had died July 8, 1958.

On defendants' cross-examination of William's sister Jessie Linn, she testified that in August 1960 William came to her

house and said he came to see what she thought about the note "the folks" gave him; she replied, "They did not give you that note"; asked why she said that to her brother, she answered in part, "From the conversation between my folks and me I knew they had never cancelled any debt." On redirect examination Jessie testified without objection that her brother gave her the impression he still owed the money.

The trial court held William was incompetent under Code section 622.4 to testify to the claimed gift of the note; that he and his wife were likewise incompetent to testify to the transaction with decedent regarding the $9000 check in February 1960; the burden to prove the gift by clear and satisfactory evidence was upon them; no presumption the note was discharged arose from William's possession of it before maturity; if such presumption were held to exist, considerable doubt was cast upon William's possession of the note held by his deceased parents; the equities are with plaintiff and he is entitled to judgment on the note and foreclosure of the mortgage.

I. Our review is de novo. Rule 334, Rules of Civil Procedure. However, especially when considering the credibility of witnesses, we give weight to the findings of the trial court, but are not bound by them. Citation of authorities is unnecessary. Rule 344(f)7, R. C. P.

The trial court seems to have considered the case with unusual care. More than two months after the court's decision was filed, defendants filed a motion for new trial, the court reconsidered the vital questions raised and adhered to the conclusions previously reached.

II. The burden was upon defendants to prove the claimed gift of the note by clear, satisfactory and convincing evidence. Bosserman v. Watson, 230 Iowa 627, 639, 642, 643, 298 N.W. 804, 810, 812, and citations; Williams v. Harrison, 228 Iowa 715, 723, 293 N.W. 41, 44, and citations. See also Carlson v. Bankers Trust Co., 242 Iowa 1207, 1214, 50 N.W.2d 1, 6, and citations; Meredith v. Cockshoot, 235 Iowa 213, 220, 16 N.W.2d 221, 225.

Bosserman v. Watson, supra, was an action in equity, much like this, by a decedent's administrator to establish ownership

of bonds in defendant's possession under a claimed gift from decedent. The trial court upheld the gift but we reversed although the evidence seemed to be stronger than it is here. This from the opinion (page 642 of 230 Iowa, page 812 of 298 N.W.) is applicable here:

"It is essential * * * there be proof of a donor's intention and purpose to give and * * * to pass title by the gift and that there has been delivery, in pursuance of that purpose and intent. The burden of proof as to all these essential elements is on the one who makes claim to the gift and * * * to show that the evidence of the consummated gift is clear and satisfactory."

One circumstance the cited case holds was inconsistent with a completed gift is that the alleged donor was to have the interest from the bonds during his life. Here William testified, as stated, that at the time he says the note was given him he was told his parents were to be paid interest as long as they lived.

III. We have frequently pointed out that evidence of a claimed oral gift from a person deceased, or similar transaction, challenges the scrutiny and skepticism of the court and imposes upon it the duty to subject the evidence to every fair test which tends to weaken its credibility. Sufficient support for this is found in Connell v. Hays, 255 Iowa 261, 268, 122 N.W.2d 341, 346, and citations.

IV. Defendants assign five errors for reversal just as if the action were at law and not reviewable de novo. Four of them relate to applicability of the dead man statute. The other challenges the trial court's conclusion that defendants' possession of the note, under the circumstances, raised no presumption of payment. We think the claimed errors except one which relates to the dead man statute are directly ruled by the terms of the statute and our prior decisions contrary to defendants' contentions. Also that the one error referred to is without merit.

So far as pertinent, Code section 622.4, provides: "No party to any action or proceeding, nor any person interested in the event thereof, * * * and no husband or wife of any said party or person, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination

deceased, * * * against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person * * *."

██ Defendants contend the statute has no application to actions brought by a decedent's administrator but applies only to actions brought against such representative. We have held to the contrary. The statute applies whether the action is brought by or against the protected party provided the incompetent witness testifies against such party to a personal transaction or communication between the witness and a person deceased. The effect of our decisions is that a witness called by a defendant testifies against plaintiff no less than one called by a plaintiff testifies against defendant. "The mouth of the decedent is just as effectually closed where the executor is plaintiff as where he is defendant." Leasman v. Nicholson, executor, 59 Iowa 259, 263, 264, 12 N.W. 270, 13 N.W. 289, 290; Chapman v. Chapman, 132 Iowa 5, 6, 109 N.W. 300; Bosserman v. Watson, supra, 230 Iowa 627, 638, 639, 298 N.W. 804, 810; Nelson v. Nelson, 245 Iowa 1225, 1230, 65 N.W.2d 154, 156; Luse v. Grenko, 251 Iowa 211, 217, 100 N.W.2d 170, 174. See also Cherokee State Bank v. Lawrey, 203 Iowa 20, 22, 212 N.W. 359.

██ V. Defendants contend that by offering the note and mortgage in evidence and offering testimony of witnesses other than plaintiff, mainly to the execution and delivery of the instruments, plaintiff opened the door for defendants to testify to the claimed gift from decedent.

Making of the note and mortgage was admitted in defendants' answer. They were offered and received in evidence without testimonial identification and without objection. Plaintiff was never examined as a witness in his own behalf. Code section 622.5, which defendants argue made them competent witnesses to the alleged gift from the deceased parents, therefore has no application here. The section reads, in pertinent part: "This prohibition shall not extend to any transaction or communication as to which any such * * * administrator * * * shall be examined on his own behalf * * *." The prohibition referred to is of course that provided by 622.4, supra.

Repeated decisions commencing with Canaday v. Johnson, 40 Iowa 587, 590, 591, support our conclusion. There the administrator of a decedent offered testimony of the surviving widow to prove settlement of the account sued on. We held:

"The fact that the widow of deceased has testified respecting the settlement of the account, does not open the way for plaintiff to testify respecting such personal transaction and communications. In order that he may do so, it is necessary that the defendant should not only be a witness in his own behalf, but that he should also testify respecting such transaction or communication.

"It was not proper to allow plaintiff, for the purpose of rebutting the testimony of decedent's widow, to testify respecting personal transactions and communications between himself and deceased.—Reversed."

To like effect are Wood v. Brolliar, 40 Iowa 591, 594; Mehlisch v. Mabie, 180 Iowa 450, 461, 160 N.W. 368, 372; In re Estate of Custer, 229 Iowa 1061, 1066–1069, 295 N.W. 848, 852, 853; O'Brien v. Biegger, 233 Iowa 1179, 1209–1213, 11 N.W.2d 412, 426, 427.

In re Estate of Brown, 92 Iowa 379, 386, 387, 60 N.W. 659, and Whisler v. Whisler, 117 Iowa 712, 715, 89 N.W. 1110, furnish added support for the view that the mere introduction of the note and mortgage without objection, which were admittedly given, did not render defendants competent to testify to the claimed gift.

Connell v. Hays, supra, 255 Iowa 261, 270, 122 N.W.2d 341, 347, cited by defendants several times, does not aid them. There plaintiff sought specific performance of an oral contract under which she was to receive realty of a decedent in return for services rendered him. *The executor* (who was also a devisee and heir) testified about a series of checks decedent gave plaintiff and offered them in evidence in an apparent effort to prove payment of her claim. We held that by reason of section 622.5, supra, the executor's testimony permitted plaintiff to testify, in rebuttal, the checks were given to pay for utilities rather than for her services.

The Connell decision is a proper application of section

622.5. The factual situation here is not comparable. As stated, this plaintiff did not testify at all, much less testify to the claimed transaction or communication by which the deceased parents made a gift of the note to defendant William. See also Clarity v. Sheridan, 91 Iowa 304, 307, 308, 59 N.W. 52; Thorne v. Reiser, 245 Iowa 123, 128, 129, 60 N.W.2d 784, 787, 788.

The Thorne opinion states: "It will be seen that section 622.5 operates to lift the prohibition of section 622.4 *only* when the *same* 'transaction or communication' is being inquired into as was testified to by the other party. * * * We think the language of the statute compels the interpretation we give it and that the court did not err in excluding defendants' testimony."

■ VI. Prior to the trial plaintiff took the discovery deposition of defendant William Bethel under Division VII, Rules of Civil Procedure. It was taken with the understanding by both sides that any objections to the evidence were reserved until time of trial. Plaintiff did not offer any part of the deposition on the trial. Defendants offered the deposition subject to plaintiff's objection that William was incompetent under section 622.4 to testify to any personal transaction or communication between him and his deceased parents. The trial court held the deposition could not be used to prove the claimed gift of the note. Defendants challenge this ruling.

■ Defendants also contend taking of the deposition by plaintiff, although not offered by him, was a waiver of William's alleged incompetence as a witness under section 622.4, not only as to what he said in the deposition but as to other testimony of William at the trial, relating to transactions or communications with his parents.

We agree with the trial court's rulings.

So far as applicable, Division VII, R. C. P., contains these rules:

"140. Depositions generally—stipulation. Depositions shall be governed wholly by these rules, * * *. Subject to the restrictions in rule 141, a party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories *for the purpose of discovery or for use*

*as evidence in the action, or for both purposes."* (Emphasis added.)

"143. Subject to the provisions of rule 141, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, * * *. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.

"144. Any part of a deposition, *so far as admissible under the rules of evidence,* may be used upon the trial * * *:

"(a) To impeach or contradict deponent's testimony as a witness; or

"(b) For any purpose if, when it was taken, deponent was a party adverse to the offeror, * * * [emphasis added].

"145. Effect of taking or using.

"(a) If a party offers only part of a deposition, his adversary may require him to offer all of it relevant to the portion offered; and any other party may offer other relevant parts.

"(b) A party does not make deponent his own witness by taking his deposition or using it solely under rules 144(a), or 144(b). A party introducing a deposition for any other purpose makes the deponent his witness, but may contradict his testimony by relevant evidence."

"158(e) * * * objections to testimony, or competency of a witness, need not be made prior to or during the deposition, unless the grounds thereof could then have been obviated or removed."

Rules 144 and 145, supra, govern the use of depositions as evidence. It is clear William's deposition was not admissible under these rules. It was not offered to impeach his testimony as a witness on the trial. Nor was William a party adverse to the offeror—he was both deponent and offeror. Further, a deposition may be used only "so far as admissible under the rules of evidence." As stated, no part of the deposition was offered prior to defendants' reading it in evidence.

Our rules are inconsistent with the contention that taking

the deposition was a waiver of plaintiff's right to object to William's competency under section 622.4 when called as a witness by defendants. The rules on this subject were extensively revamped in 1957. See article by Professor Allan D. Vestal, a member of our advisory committee, in 43 Iowa Law Review 8. See also 7 Drake Law Review 3. Rule 140 was then enlarged to provide specifically that the deposition of a party may be taken and to make clear that depositions may be taken "for the purpose of discovery *or* for use as evidence in the action, or for both purposes." This deposition may well have been taken, as was plaintiff's right, for the purpose of discovery, not to be used as evidence on the trial. In offering it defendants' counsel referred to it as a discovery deposition.

A recognized purpose of discovery is to aid the interrogating party to prepare for trial. Hardenbergh v. Both, 247 Iowa 153, 158 et seq., 73 N.W.2d 103, 106 et seq.; Stiefel v. Wandro, 246 Iowa 807, 819, 820, 68 N.W.2d 53, 60.

We may note that prior to the 1957 changes rule 141(a) provided "The deposition of an adverse party * * * may not be taken for purposes of discovery." Under the amended rules we have held a litigant is entitled to know in advance of the trial, with a few exceptions not here applicable, "what his adversary contends the facts to be which are germane to the action." Hot Spot Detector, Inc. v. Rolfes Electronics Corp., 251 Iowa 647, 656, 102 N.W.2d 354, 362. We may also observe rule 145(b), supra, provides "A party does not make deponent his own witness by taking his deposition * * *." Also that rule 158(e) says "objections to testimony, or competency of a witness, need not be made prior to or during the deposition, unless the grounds thereof could then have been obviated or removed." This last proviso does not apply here.

The question whether merely taking the discovery deposition of an incompetent witness is a waiver of his incompetency to testify upon the trial seems never to have been decided by us. However, there is much authority in other jurisdictions that no waiver results. 97 C. J. S., Witnesses, section 243, page 729, states: "* * * the more general rule is that the calling of a witness in discovery proceedings by the executor or admin-

1368

istrator to testify as to his transactions with decedent does not remove the incompetency of the witness to testify as to such matters in subsequent litigation as to the discovered assets, unless the testimony given by the witness in the discovery proceeding is put in evidence by the executor or administrator. * * * The filing of interrogatories in an administrator's proceeding to recover assets has been held not a waiver of the incompetency of the party answering them."

Decisions supporting the quoted text include: Duling v. Markun, 7 Cir., Ind., 231 F.2d 833, 838, 839 (certiorari denied 352 U. S. 870, 77 S. Ct. 96, 1 L. Ed.2d 76); Anderson v. Benson, D. C. (Neb.) 117 F. Supp. 765, 770–772; Thomas v. Thomas, 83 Idaho 86, 357 P.2d 935, 937–939; Pink v. Dempsey, 350 Ill. App. 405, 113 N.E.2d 334, 339; Schroeder v. Dickinson Trust Co. of Richmond, 110 Ind. App. 295, 38 N.E.2d 868, 869; O'Neal v. First Trust Co. of York, 160 Neb. 469, 70 N.W.2d 466, 471, 472; De Laurent v. Townsend, 243 N. Y. 130, 152 N.E. 699, 700; Prince v. Abersold, 123 Ohio St. 464, 175 N.E. 862.

Several of these precedents consider the question at length under rules of procedure very similar to our present ones and fully review the applicable decisions.

VII. We agree with the trial court's conclusion that defendants' possession of the note, under the circumstances, raised no presumption of payment and, if it did, the presumption was rebutted.

It is well settled that a negotiable instrument is discharged when the principal debtor becomes the holder thereof at or after maturity in his own right. Code section 541.120(5); Haldeman v. Martin, 205 Iowa 302, 304, 305, 217 N.W. 851; Annotations, 70 A. L. R. 859, 882, 156 A. L. R. 777, 785; 11 Am. Jur.2d, Bills and Notes, section 910. As defendants admit in argument, the presumption does not apply where possession is prior to maturity.

This note matured, according to its terms, in 1970. The mere fact it gave the holder the option to declare it due for nonpayment of interest did not, as defendants contend, mature the note prior to the exercise of the option at the commencement of this action. Federal Land Bank v. Wilmarth, 218 Iowa 339,

344, 252 N.W. 507, 94 A. L. R. 1338, 1342, and citations; Annotation, 159 A. L. R. 1077, 1084; 11 Am. Jur.2d, Bills and Notes, section 294, page 318.

Further, the presumption, if it did exist, is a rebuttable one. Defendants do not plead they paid the note nor make such a claim at anytime. At least until less than two months before the father died at age 80 he lived for a time with William and Maxine. What is said in Haldeman v. Martin, supra, 205 Iowa 302, 305, 217 N.W. 851, 852, is applicable here:

"Mere possession of an instrument by the maker under circumstances laying his possession open to suspicion gives rise to no presumption of payment, nor does such presumption arise if possession may be satisfactorily accounted for upon any other reasonable theory than that of payment. If the maker has access to the papers of the holder, and may reasonably have acquired the instrument without payment, there is no presumption of payment. The obligor's possession of a negotiable instrument before due of itself creates no presumption of payment. These rules are peculiarly applicable to the unexplained possession by the obligor of paper held by one who has died [citations]. Possession after the death of the holder by one having access to his papers affords no evidence of a gift" (citations).

VIII. We have tried to follow the outline of defendants' brief in what has been said. We may add we would reach the same result if William's testimony as to the claimed gift were considered. In our opinion it falls short, in the light of the entire record, of establishing a gift of the note by the requisite clear, satisfactory and convincing evidence. As in Haldeman v. Martin, supra, "The evidence contains no suggestion of purpose or reason for making a gift." Indeed William testified that except for his father's wanting him to have it he could think of no reason why decedent would give him $9000—"I couldn't tell you why he didn't want the note paid."—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.